UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No. 1:12-CV-22768-CIV-SEITZ/SIMONTON

| | |
|---|---|
| MALIBU MEDIA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LEO PELIZZO, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant, Leo Pelizzo ("Defendant"), by and through undersigned counsel and pursuant to Fed.R.Civ.P 12(b)(6), files the following reply in support of Defendant's Motion to Dismiss.

**I. INTRODUCTION.**

Plaintiff's *revised* Opposition to Defendant's Motion to Dismiss, filed on October 16, 2012, contends that Defendant's Motion "without discussion or analysis – Defendant falsely accuses Plaintiff of conclusorily alleging facts" and "sets forth a parade of *ad hominen* [sic] attacks." [DE #13]. In light of the context surrounding this suit, it is unclear whether Plaintiff's allusions to "false accusations" and "*ad hominem* attacks" are intentionally ironic or, simply, an unfortunate choice of words. Plaintiff's claim that Defendant's Motion is unaccompanied by "discussion or analysis" is also puzzling given the lengthy factual discussion in Defendant's Motion. And then, of course, there is Plaintiff's hysterical declaration that Defendant has "invite[d] this Court to nullify the Copyright Act" which precedes its inexplicable decision to devote a portion of its Response to a spirited defense of the undisputed proposition that copyright infringement can occur on the internet.

It is, of course, possible that the inapplicability of Plaintiff's sweeping pronouncements are attributable to the accidental filing of a document meant for one of Plaintiff's myriad other lawsuits. Realistically, however, Plaintiff's non-sequiturs and histrionics are simple attempts to divert attention from the deficiencies outlined in Defendant's Motion. As discussed below, Plaintiff's explanations and documents do not cure its failure to plead facts sufficient to supports

its claims for copyright infringement and, therefore, this action should be dismissed.

## II.     PLAINTIFF'S CONCLUSORY ALLEGATIONS ARE INSUFFICIENT.

As previously discussed, plaintiff must allege more than "labels and conclusions" to fulfill its burden under Fed.R.Civ.P. 8(a)(2). See Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282 (11th Cir. 2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554-55 (2007).) Plaintiff's claims hinge on a threadbare Complaint that, in turn, relies exclusively upon a boilerplate declaration that is, at best, vague and conclusory and, at worst, factually inaccurate and misleading. Plaintiff's self-serving guesses also to meet the pleading requirement for direct copyright infringement by failing to include any allegations that some element of volition or causation exists.

More specifically, Plaintiff's claims of direct copyright infringement rest upon the allegation that "[a]s the subscriber of the Internet service being used to distribute Plaintiff's copyrighted movies, Defendant is the most likely infringer." [Complaint, ¶23]. This Court, however, has recognized that some element of volition or causation must exist to support a claim of direct copyright infringement. See Disney Enters. v. Hotfile Corp., 798 F. Supp. 2d 1303, 1306 (S.D. Fla. 2011)(citing Religious Technology Center v. Netcom On-Line Communication Services, 907 F. Supp. 1361, 1370 (N.D. Cal. 1995)(granting a motion to dismiss where Plaintiff failed to plead any plausible facts that Defendant committed a volitional act of copyright infringement.) As in Disney Enters. v. Hotfile Corp, the Plaintiff's Complaint includes no allegations that the Defendant "took direct, volitional steps to violate the plaintiffs' infringement." See 798 F. Supp. 2d at 1308; see also Cartoon Network LP v. CSC Holdings, Inc, 536 F.3d 121 (2d Cir. 2008)(a defendant must "engage in volitional conduct - specifically, the act constituting infringement - to become a direct infringer").

Plaintiff alleges that Defendant is the subscriber of an internet service purportedly associated with the infringing IP address. Plaintiff's subscription to an internet service, however, is not a "volitional" act of infringement. Cf. Disney Enters.,798 F. Supp. 2d at 1309(noting that "courts have repeatedly held that the automatic conduct of software, unaided by human intervention, is not 'volitional.'") Similarly, since an IP address cannot identify a specific person, an IP address – alone -- is insufficient to support any allegation of volitional conduct. Therefore, Plaintiff's mere allegation that technology *allegedly* subscribed to by the Defendant may have been used to infringe is, absent some allegation that Defendant consciously and

physically executed the steps necessary to download Plaintiff's films, insufficient to support Plaintiff's claim of direct infringement. See id.; see also Parker v. Google, 422 F. Supp. 2d 492, 497 (E.D. Pa. 2006) ("When an ISP automatically and temporarily stores data without human intervention so that the system can operate and transmit data to its users, the necessary element of volition is missing. ")

## II.  PLAINTIFF DID NOT INFRINGE THE COPYRIGHTED WORKS.

Furthermore, it must be emphasized that the IP address associated with Defendant's internet account does match the infringing IP address. See Pelizzo Affidavit at ¶17 and corresponding Exhibit B.  Plaintiff's has now indicated that the infringing IP address continued to engage in the infringing activities through, at least, September 18, 2012. See [DE 13 #, Exhibit C].  Moreover, in an October 23rd phone conversation with the undersigned, Plaintiff's counsel admitted that the IP address specified in Plaintiff's Complaint has continued to engage in infringing activity.  As Defendant verified assignment of a distinct IP address at least as of September 10th, any continuing infringement under the disputed IP address only lends further credibility to the claim that the disputed IP address was incorrectly associated with Defendant.

In addition, even if the infringing IP address was correct, the Defendant was in Venezuela from January 8, 2012 to August 20, 2012 and, therefore, could not have initiated any of the infringing activity upon which Plaintiff's claims rely. See Pelizzo Affidavit, ¶5 and corresponding Exhibit.  The earliest infringement date Plaintiff provides is January 23, 2012. See [DE #1-2, Exhibit A to Complaint.]  Accordingly, Defendant could not have initiated any infringing activity from this address for a period --January 8, 2012 to August 20, 2012 – that encompasses the entire range of activity upon which Plaintiff's claims rely. Plaintiff's response that BitTorrent "continues to distribute data for a particular torrent file until the user commands its BitTorrent Client to stop distributing it" is inapplicable if – as is the case here – the user could not have initiated the download.

## III.  PLAINTIFF NOW ADMITS THE INSUFFICIENCY OF AN IP ADDRESS AS A MEANS OF IDENTIFICATION.

Plaintiff previously represented to this Court that an "IP address is a ***unique*** numerical identifier that is automatically assigned to an internet user by the user's Internet Service Provider ("ISP"). See [Complaint, Feiser Decl. at ¶7.]  Now, presented with evidence that Defendant's IP address does not match the infringing IP address, Plaintiff has backtracked and contradicted its

3

earlier characterization of IP addresses. Rather than the virtual equivalent of a fingerprint, Plaintiff now asserts that "IP addresses are routinely assigned to different people [which] is why Plaintiff provides ISPs with the exact time that the infringement occurred." [DE #13, p.6.] This statement, of course, supports the arguments made in Defendant's prior Motion and concerns raised by other courts to this very Plaintiff. See, e.g., In re BitTorrent Adult Film Copyright Infringement Cases, 2012 U.S. Dist. LEXIS 61447, at *9 (E.D.N.Y. 2012)(unambiguously expressing concerns to Malibu Media, LLC and its counsel "that many of the names and addresses produced in response to Plaintiff's discovery request will not in fact be those of the individuals who downloaded "My Little Panties # 2.")

If, as Plaintiff now claims, "IP Addresses are routinely assigned to different people", then Plaintiff's allegations are implausible unless they specify times and dates that the Defendant was assigned the infringing IP address. Here, Plaintiff has simply alleged that a "computer using the IP address assigned to Defendant participated in the alleged infringing activity." [Complaint ¶23]. Plaintiff includes no allegation that Defendant was assigned to the infringing IP address at the specific times and dates the infringing activity. Consequently, Defendant's allegations fail to "plausibly suggest that the plaintiff has a right to relief [and raise] the possibility above a 'speculative level'." James River Ins. Co. v. Ground Down Engineering Inc., 540 F.3d 1270, 1274 (11th Cir. 2008).

Furthermore, the information Plaintiff relied upon in bringing suit against Defendant, namely the ISP correspondence attached as Exhibit B to Plaintiff's Response, includes no references to any dates or times. See [DE #13, Exhibit B]. Accordingly, if Plaintiff's counsel failed to request such specifics from the ISP prior to bringing suit, Defendant respectfully submits that this information may support the imposition of sanctions under Fed.R.Civ.P. 11. Cf. Malibu Media, LLC v. Doe, 2012 U.S. Dist. LEXIS 110668, at *6-7 (M.D. Fla. Aug. 7, 2012) ("The plaintiff shall inform each John Doe defendant of the potential for sanctions under Rule 11, Fed.R.Civ.P., if the John Doe defendant is incorrectly identified.")

### IV.     DISCOVERY CANNOT CURE A PLEADING DEFECT.

Despite the foregoing, Plaintiff now complains "that it has been afforded no opportunity for discovery." [DE #13, p. 6].  Plaintiff, therefore, appears to have filed a factually insufficient pleading with the expectation that this Court will allow it to conduct additional discovery during the pendency of Plaintiff's Motion to Dismiss. This would, effectively, "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions" and allow Plaintiff to

4

circumvent two Supreme Court decisions that introduced a stricter pleading standard to prevent this very conduct. See Ashcroft v. Iqbal, 556 U.S. 662, 677-79; Twombly, 550 U.S. at 559 (noting that such an outcome would "push cost-conscious defendants to settle even anemic cases."); see, also Goldin v. Boce Group, L.C., 773 F. Supp. 2d 1376 (S.D. Fla. 2011)(noting that discovery "is not an appropriate cure for [a] pleading defect" and that "[a] pre-suit investigation by Plaintiff's counsel should have revealed whether Plaintiff could allege these facts.")

Plaintiff's expectations are particularly galling as it already availed itself of a mechanism that allows it to take advantage of the asymmetry between state and Federal pleadings standards to obtain its pre-trial discovery. See Exhibit A to Plaintiff's Response. By obtaining a pure bill of discovery from a state court, Plaintiff has short-circuited this Court's jurisdiction and lowered the bar for obtaining pre-trial information. Dissatisfied with the information obtained – as well as with its own pre-trial investigation efforts -- Plaintiff now expects this Court to provide it with additional time to conduct discovery to support its claims.

Defendant respectfully submits that the legality of using a state court decision to obtain discovery for a claim over which Federal courts have exclusive jurisdiction is a question that merits additional legal analysis. See, e.g., Butzberger v. Novartis Pharm. Corp., 2006 U.S. Dist. LEXIS 85576, 9-10 (S.D. Fla. 2006) (noting that Florida courts do not distinguish between complaints for pure bills of discovery and actions at law.); See generally AF Holding, LLC v. John Doe (74.166.133.168), Case No. 12-22147 (S.D. Fla August 9, 2012)(stating that "[t]he Court has an interest in managing the discovery it authorizes in a lawsuit it is presiding over."). Until then, however, Plaintiff's use of this mechanism to facilitate the filing of highly, embarrassing Federal suits against individuals should, at the very least, make its claims for "additional discovery" far less sympathetic. See, e.g., Liles v. Stuart Weitzman, LLC, 2010 U.S. Dist. LEXIS 53584 at *5 (S.D. Fla. May 6, 2010) ("The Court will not permit discovery . . . for the purpose of seeking to find some evidence of wrongful conduct."); see also Fed. R. Civ. P. 11(b) (requiring "an inquiry reasonable under the circumstances" by counsel before making representations to a court).

Based on the foregoing, as well as the reasons addressed in Defendant's underlying Motion, Defendant respectfully requested that Plaintiff's Complaint be dismissed for failure to state a cause of action and for failure to state a claim upon which relief can be granted.

                                                        Respectfully submitted,

Dated: October 26, 2012                By: s/Francisco J. Ferreiro
      Miami, Florida                         Francisco J. Ferreiro
                                                  Florida Bar No. 37,464
                                                  fferreiro@malloylaw.com
                                                  MALLOY & MALLOY, P.A.
                                                  2800 S.W. Third Avenue
                                                  Miami, Florida  33129
                                                  Telephone (305) 858-8000
                                                  Facsimile (305) 858-0008

                                                  Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

       I hereby certify that on October 26, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

                                                 s/ Francisco J. Ferreiro
                                                    Francisco J. Ferreiro
                                                    Florida Bar No. 37,464

## SERVICE LIST

### Case No. 1:12-CV-22768-CIV-SEITZ/SIMONTON

M. Keith Lipscomb (429554)
klipscomb@lebfirm.com
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile: (786) 431-2229

*Counsel for Plaintiff*
Notices of Electronic Filing
Generated by CM/ECF