# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
### Case No. 1:12-CV-22768-CIV-SEITZ/SIMONTON

|  |  |
|---|---|
| MALIBU MEDIA, LLC, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| LEO PELIZZO, | ) |
|  | ) |
| Defendant. | ) |
| _____ | ) |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL WITH PREJUDICE

Defendant Leo Pelizzo ("Defendant" or "Mr. Pelizzo"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 41, hereby consents to Plaintiff's Motion for Voluntary Dismissal subject to the condition that the dismissal be entered with prejudice and that Defendant be permitted leave to move for fees or sanctions pursuant to 17 U.S.C. §505, Federal Rule of Civil Procedure 54(d)(2), 28 U.S.C. §1920, §1927, Local Rule 7.3, and any other applicable statutory provisions governing fees and sanctions.[1]  In support thereof, Defendant states the following:

## I.    BACKGROUND.

### A.  Plaintiff's Pre-Suit Investigation

While Defendant does not oppose Plaintiff's Motion for Dismissal, the unique circumstances of this case warrant an award of the fees and costs incurred by Defendant in

---

[1] Defendant submits this condition in an abundance of caution, as a motion for fees and/or sanctions would likely be appropriate provided the requested dismissal is entered with prejudice. *See, e.g., Mathews v. Crosby, 480 F.3d 1265, 1276* (11th Cir. Fla. 2007).

defending this action.  Specifically, Mr. Pelizzo – a 61-year old citizen of Venezuela– received no notification from the Plaintiff before being publicly and wrongly identified as a "persistent" infringer and distributor of pornographic titles such as "Pretty Back Door Baby" and "Anneli Leila Menage A Trois." [Complaint, ¶2].  These highly embarrassing claims were rooted in the boilerplate declaration of an unlicensed, German investigator asserting that the infringing activity was correlated to a specific IP Address. [Complaint, Exhibit C].  This search does not appear to have been supervised or witnessed by any other individual and was conducted using proprietary software about which there is little information.  Consequently, apart from the representation of one individual, there were no means by which to (1) confirm the efficacy of the proprietary software used to conduct the search; or (2) verify the accuracy of data inputted as part of this search.

Nevertheless, using this information Plaintiff requested and obtained information from Hotwire Communications ("Hotwire") linking Mr. Pelizzo to the IP Address obtained in the above-referenced investigation. [DE # 13, Exhibit B.]   This correspondence failed to include (1) the specific date(s) and time(s) that Mr. Pelizzo's account was correlated to the IP Address; and/or (2) the specific date(s) and time(s) inputted as part of the search query. *See* DE # 13, Exhibit B.   It did, however, state that "Hotwire does not maintain individual records of users of Internet." *See* DE # 13, Exhibit B.

Despite these ambiguities, Plaintiff does not appear to have made any effort to (1) obtain clarification as to what entity might, in fact, maintain "individual records of users of the internet"; or (2) to verify that Hotwire's search had targeted the relevant dates of infringement. Further, Plaintiff made no attempt to obtain the MAC Address associated with the infringing activity despite the fact that Hotwire could have provided this information which, in contrast to

an IP Address, could have been used to identify the specific device used in connection with the infringement.  *See* Exhibit A [Deposition of Laurie M. Murphy], p. 73, lns 7-10, lns 15-25 (hereinafter "*Murphy Deposition*").

### B. Plaintiff's Motion to Dismiss.

Upon learning of the claims made in Plaintiff's Complaint, Mr. Pelizzo was determined to publicly defend his reputation and, therefore, had no choice but to incur the costs and expenses associated with litigation.[2]  Accordingly, Defendant filed a Motion to Dismiss noting, in part, (1) that Mr. Pelizzo was a 61-year old, married man residing and working in Venezuela; (2) that Mr. Pelizzo was in Venezuela from January 8, 2012 to August 20, 2012; (3) that the "physical address" referenced in Plaintiff's Complaint was a 700-unit building; (4) that Defendant's condominium association, and not the Defendant, was the subscriber of the internet service; and (5) that the IP address in question did not, as of September 10, 2012, correlate to Defendant's IP address.[3] *See* [DE #7 and Pelizzo Affidavit].  Despite receiving notice of the foregoing, Plaintiff made no effort to dismiss this action.

### C.  Deposition of Hotwire Communications.

On December 21, 2012, Plaintiff served Hotwire with a Notice of 30(b)(6) deposition of Hotwire's record custodian to be taken on February 11, 2013.  Contemporaneously with this Notice, Plaintiff served Hotwire with a series of requests for documents to be produced prior to the deposition date.  On February 1, 2013, Hotwire provided Plaintiff with responses stating, in part, (1) that Hotwire had a bulk service contract with the apartment building and did not deal with Mr. Pelizzo; (2) that "if Mr. Pelizzo's PC or router is offline for more than 24 hours, the

---

[2] As Mr. Pelizzo resides in Venezuela, these expenses included those associated with traveling to the United States in order to attend a court-ordered mediation.
[3] Though IP Addresses are dynamic, this last fact was – nevertheless -- pertinent as Plaintiff later asserted that the infringing activity remained ongoing under the original IP Address through, at least, September 18, 2012. See DE#13, pg. 1, FN1.

lease [of the IP Address] expires and may be assigned to another subscriber; and (3) that "the current user of the IP in question is not Mr. Pelizzo."[4] *See* Exhibit B.  Five (5) days later, Plaintiff cancelled the deposition scheduled for February 11, 2013.

The deposition of Hotwire's corporate designee, Laurie M. Murphy, Esq., was eventually held on March 12, 2013.   It would not be hyperbolic to describe Ms. Murphy's testimony as a series of explanations about why "Hotwire cannot definitively identify a subscriber." *Murphy Deposition,* p. 25, lns. 5-17.

First, Ms. Murphy noted that IP Addresses "aren't necessarily assigned to a subscriber [but rather are] in a constant sort of mixing pod." *Murphy Deposition*, p. 24, lns 3-12; p. 31, lns 16-19; p. 32, lns 4-24.   More specifically, Hotwire provides condominium buildings with "blocks" of IP addresses that are leased out to the building's 700+ unit owners on a rotating basis. *See Murphy Deposition*, p. 24, lns 3-12; p. 31, lns 16-19; p. 32, lns 4-24.   Of important note, given Mr. Pelizzo's extended period of vacation, was the fact that an IP Address not in use for 24 hours – such as if "someone goes on vacation"[5] – is reassigned to a different unit. *Murphy Deposition*, p. 24, lns 3-12; p. 31, lns 16-19; p. 32, lns 4-24.

Ms. Murphy testimony also revealed a disconcerting number of holes in the investigation that identified Mr. Pelizzo as the subscriber of the IP Address in question.   Specifically, Ms. Murphy testified that the condominium's property manager, and not Hotwire, maintains records of the current tenant in each of the building's 700 units.  *Murphy Deposition*, P.60, lns 3-5, 15-19., lns 20-23.  Despite the foregoing, Hotwire made no effort to confirm the veracity of this information prior to identifying Mr. Pelizzo as the infringing subscriber.

Ms. Murphy also noted that the internet port connection associated with an individual

---

[4]        The undersigned was eventually provided with this document on March 11, 2013.
[5] *Murphy Deposition*, p. 24, lns 5-16.

unit may occasionally be mislabeled.  Consequently, there was a possibility that "somebody mislabeled a port and said that that port belongs to Unit 124, but it actually goes into Unit 125." *Murphy Deposition*, p. 33, lns 21-25, p. 34, lns 2-5.  Despite the foregoing, Hotwire made no effort to verify that Mr. Pelizzo's port had been correctly labeled prior to identifying him as the infringing subscriber. *Murphy Deposition*, P. 59,  lns 15-18.

Perhaps most shockingly, these deficiencies extended to the underlying IP Address search which was conducted, without any supervision, by a technician that is no longer employed by Hotwire. *Murphy Deposition*, p. 55, Lns 13-15; P. 57, lns 8-10.   Consequently, Hotwire had no means of verifying, for example, that the technician had not mistakenly inputted an incorrect IP Address or date/time.

## II.      THE EQUITIES WARRANT THE REQUESTED CONDITION.

In the wake of these developments, Plaintiff continued to prosecute its case against Mr. Pelizzo.  On March 22, 2013, Defendant was served with Plaintiff's Set of Interrogatories and Requests for Production and informed of Plaintiff's intent to depose Mr. Pelizzo.  On April 4, 2013, the pendency of this action required Mr. Pelizzo to travel to the United States to attend a mediation scheduled on that date.  It was only after Mr. Pelizzo incurred the fees and costs associated with this mediation, and only after the parties failed to reach a resolution of this dispute, that the Plaintiff attempted to dismiss its action on April 11, 2013.

The Eleventh Circuit has noted that "a lawyer cannot absolve himself of responsibility by dismissing his client's suit."  *Matthews v Gaither,* 902 F.2d 877, 880 (11th Cir. 1990).  Consequently, it is typical to place conditions upon the acceptance of a voluntary dismissal.  *McBride v. JLG Industries, Inc.,* 189 Fed. Appx. 876 (11th Cir. 2006).  Here, one needs only put themselves in Mr. Pelizzo's position to understand why conditions may be needed to ensure he does not lose "any

substantial right by the dismissal." *See, e.g., Pontenberg v. Boston Scientific Corp.*, 252 F.3d 1253, 1255 (11th Cir. 2001). Plaintiff filed a highly-embarrassing lawsuit against a 61-year old, married man (1) without ever speaking to Mr. Pelizzo about the alleged activity; (2) without attempting to confirm the accuracy or clarify the ambiguous results of Hotwire's subsequent investigation; (3) despite Hotwire's acknowledgment that it did "not maintain individual records of users of internet" [DE # 13, Exhibit B]; and (4) without requesting information – namely a MAC Address – that could have more accuratelyy identified the source of the infringing activity. *Murphy Deposition,* p. 73, lns 7-10, lns 15-25. Consequently, while Defendant does not oppose Plaintiff's Motion for Voluntary Dismissal, Defendant requests that the dismissal be entered with prejudice and that Defendant be permitted leave to move for fees pursuant to 17 U.S.C. §505, Federal Rule of Civil Procedure 54(d)(2), 28 U.S.C. §1920, §1927, Local Rule 7.3, and any other applicable provisions governing fees and sanctions.

Respectfully submitted,

Dated: May 13, 2013
        Miami, Florida

By:s/Francisco J. Ferreiro
John Cyril Malloy, III
Florida Bar No. 964,220
jcmalloy@malloylaw.com
Francisco J. Ferreiro
Florida Bar No. 37,464
fferreiro@malloylaw.com
MALLOY & MALLOY, P.A.
2800 S.W. Third Avenue
Miami, Florida  33129
Telephone (305) 858-8000
Facsimile (305) 858-0008

Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 13, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

s/ Francisco J. Ferreiro
Francisco J. Ferreiro
Florida Bar No. 37,464

## <u>SERVICE LIST</u>

**Case No. 1:12-CV-22768-CIV-SEITZ/SIMONTON**

M. Keith Lipscomb (429554)
klipscomb@lebfirm.com
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile: (786) 431-2229


*Counsel for Plaintiff*
Notices of Electronic Filing
Generated by CM/ECF