UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| MALIBU MEDIA, LLC, )<br>)<br>　　　Plaintiff, )<br>)<br>v. )<br>)<br>LEO PELIZZO, )<br>)<br>　　　Defendant. )<br>　　　　　　　　　　　　　　　　　　　　　　　) | Civil Action Case No.: <u>1:12-cv-22768-PAS</u> |

**PLAINTIFF'S REPLY TO IN FURTHER SUPPORT
OF ITS MOTION TO DISMISS THE CASE**

Defendant's response to Plaintiff's Motion to Dismiss is unnecessary and demonstrates that his counsel's motivation throughout this process has been to churn its case file and increase its fees. Indeed, Defendant's requested relief has always been available to him as set forth in Local Rule 7.3. This motion practice – instead of consenting to a dismissal which was in his client's best interest – has been done in bad faith. Plaintiff files this reply to note that Defendant must follow Local Rule 7.3 when filing his motion for attorney fees and to assert that Defendant's record of the events in this case is wrong.

Plaintiff filed this action because its investigator recorded IP address 24.238.22.207 being used to infringe Plaintiff's copyrighted works at an alarming rate. Defendant's ISP stated that it had assigned this IP address to Mr. Pelizzo. This correlation was made after a hearing wherein the Honorable Judge Trawick granted Plaintiff's motion to subpoena Defendant's internet service provider, Hotwire Communications, in a state court Pure Bill of Discovery proceeding, Miami-Dade Circuit Court Case No. 12-01794 CA 13. Plaintiff's subpoena provided Hotwire with the date and time of the infringement. After receiving the subpoena, Hotwire sent

1

Defendant a notice, complying with the Cable Communications Act, informing him of the subpoena and allowing him the opportunity to object.

In Defendant's response, Defendant states that Hotwire's Subpoena Response noted, "Hotwire does not maintain individual records of users of Internet." *See* CM/ECF 13 at Exhibit A. Under "Authorized Users" Hotwire said, "Leo Pelizzo is an Account Holder Hotwire does not maintain individual users of Internet." *Id*. All this means is that Hotwire does not track the individual users of a subscriber's Internet service. No ISP in the country does that. ISP's keep track of subscribers. Hotwire identified Mr. Pelizzo as the subscriber.

Once receiving Defendant's identity, Plaintiff attempted to contact Defendant on April 6, 2012, April 10, 2012, April 17, 2012, May 21, 2012, June 4, 2012, and August 14, 2012 via telephone. Plaintiff tried to contact Defendant for five months straight. And, the infringement continued. *See* Complaint CM/ECF 1 at Exhibit A. Despite these attempts, Plaintiff could never get in touch with Defendant nor did Defendant ever contact Plaintiff. At the same time, Defendant's IP address continued to infringe Plaintiff's movies at an alarming rate.

Plaintiff filed this federal court copyright infringement action in good faith after having observed the subject IP address being used to infringe multiple movies owned by Plaintiff over the course of several months. *Id*. Defendant retained Malloy and Malloy, and on September 21, 2012, instead of Defendant's counsel contacting Plaintiff to inform Plaintiff that Defendant had been out of the country, Defendant filed a Motion to Dismiss. *See* CM/ECF 7.

On October 16, 2012 Plaintiff filed its memorandum in opposition to Defendant's Motion to Dismiss. *See* CM/ECF 10. On October 11, 2012 undersigned sent Defendant's counsel an email stating:

Francisco and John,

Emilie Kennedy, an attorney here, called and left you a message last Friday. That call was not returned. And, you rejected my request for an enlargement – which I wanted to use so we could talk.

You both understand the value of IP and we have substantial evidence of infringement. And, so at some level you will empathize with my client. Contrary to what some believe, we do not want to push this case against a person who was not the downloader nor do we expect a non-infringer to settle. We're looking for justice. Toward that end, your client claims to have been out of the country at the time many of the infringements occurred. Hotwire identified your client's IP address as being used during that time. We need to get to the bottom of this issue. As I see it, there are three possibilities: (a) Hotwire gave us bad information; (b) someone was stealing your client's internet; or (c) your client is lying.

Figuring this out as inexpensively and expeditiously as is possible is in both of our clients' best interests. I would like to teleconference with you toward this end. Specifically, I'd like to explain to you my initial case plan and see if we can agree to move slowly while I pursue it.

Let me know when and if you are available.

Thanks,
Keith

(Exhibit A)

On October 23, 2012 undersigned sent Defendant's counsel an additional email that stated:

Francisco,

As discussed, we have evidence that your client's IP address was used to commit 20 infringements. Further, we connected to your client's IP Address 398 times to record these infringements. Oddly, the infringements are continuing on the same IP Address which was previously assigned to your client. That does not make sense to us. Because, while not impossible, two people assigned the same IP address stealing the same movies would be an unusual coincidence. The infringement is substantial though. And, my clients want it to stop.

We discussed the internet resolving to your client's vacation home, and your client being out of town for the bulk of time during which the infringement occurred. Given that your client was out of town and that the infringement

continues after your client was assigned a different IP address, it raises the possibility that there was a correlation error by your client's ISP, Hotwire. To the best of our knowledge, we have never had an ISP miscorrelate a subscriber -- but, in this instance we want to investigate. Toward that end, we plan to serve Hotwire with a subpoena duces tecum for deposition. Prior to doing so, we need to file a 26(f) report. In due course, I will prepare both documents and send them to you.

During our conversation, I urged you to advise your client not to spend money on this process. Presently, we do not intend to pursue this matter past the deposition of Hotwire unless we get confirmation from Hotwire that your client is the correct subscriber. And, thereafter we will only pursue it if we can explain why infringements occurred when he was out of town.

Best regards,

Keith

(Exhibit B)

Defendant's Motion to Dismiss was denied on December 21, 2012. *See* CM/ECF 16. Thereafter, Plaintiff took Hotwire's deposition in good faith because Plaintiff was attempting to ascertain whether a mistake was made in the subpoena response and if it could correctly identify the subject of the IP address. From the deposition, it appears that the error very likely occurred from Defendant's building misreporting to Hotwire the condominium unit to which the subject IP address was assigned. To explain, Mr. Pelizzo's building pays a group rate for the Internet used by all of its residents. Further investigation revealed that the units inside that building do not have modems provided by Hotwire. Instead, the modem for a floor is in a utility closet on that floor. And, wires from that modem are run from the closet to the residences' individual units. Hotwire testified that since the individual residences do not pay for their Internet that it does not have a business reason to keep track of the IP addresses. Further, while its electronic system for correlating IP addresses to subscribers works if there was a data input error that error would continue and not be caught because it would not affect the invoices which are sent to its

4

subscribers. This was enlightening to Plaintiff. Indeed, after taking Hotwire's deposition and the deposition of other Internet service providers undersigned has learned that the correlation and process is reliable in part because it is tied to the ISPs billing. Here, there was no such safeguard.

Having determined that this was the most likely error, Plaintiff offered to voluntarily dismiss Mr. Pelizzo. Mr. Pelizzo would not agree to a stipulation of a voluntary dismissal. Instead, Mr. Pelizzo demanded that Plaintiff pay an outrageously large amount of attorney's fees for a case that should not have required Defendant's counsel to bill more than $2,000. Plaintiff does not believe that Mr. Pelizzo is entitled to attorney's fees. At all times Plaintiff acted reasonable and in a manner consistent with the goals of the Copyright Act.

Unable to come to a resolution on attorney's fees, Plaintiff continued with the course of the case and served Defendant with discovery. Plaintiff did, however, withdraw its motion to strike Defendant's affirmative defenses in an effort to reduce their fees. And after further negotiations proved fruitless, Plaintiff did inform Defendant that it withdrew its discovery requests. Further, while Mr. Pelizzo claims mediation brought forth unnecessary costs, Plaintiff disagrees. Plaintiff believed mediation was necessary because the parties were unable to come to an agreement. Plaintiff would have happily consented to reducing Mr. Pelizzo's costs of mediation by allowing him to appear via telephone, or scheduling it for a convenient time when he would not have to plan a trip to Florida, but no such request was ever made.

While undersigned can't discuss what happened at the mediation, undersigned can say that at no time during this litigation did Plaintiff ever make a monitory demand to Mr. Pelizzo. Further, immediately after the mediation the following email was sent to Defendant's attorneys:

> Resend to correct typos -- Please note this email will be used to argue in the alternative that should the court be inclined to award *any* fees as compensation to

Mr. Pelizzo, which again, Plaintiff does not think it should do, that the fees should not include fees for drafting a motion for attorneys' fees because prior to any such motion Plaintiff made *more* than a reasonable offer to compensate Mr. Pelizzo.

Francisco,

I do not believe that your client is entitled to any attorneys' fees.  We did not press this matter beyond the point where it was reasonable to do so.  Indeed, we called you before you before you wrote the motion to dismiss.  You could have told me your client's situation at that time and avoided the necessity of writing a motion to dismiss in the first instance.  Unfortunately, you did not take our call.  Ultimately, that motion to dismiss, like all others like them, was denied.  Thereafter, I advised you that I would likely dismiss your client after we took Hotwire's deposition.  The person using the IP address Hotwire said was assigned to your client has habitually (over 500 times) infringed my client's copyrights.  Spending money after that email was done so in bad faith.  As was plainly obvious, I was attempting to figure out the error (which is of a type we have never seen before.)  Namely, it is the result of bad reporting by the building to Hotwire.  Nevertheless, you continued to spend money on this matter, in my opinion, totally unnecessarily.  Regardless, I have asked several other IP attorneys in town how much they would charge to draft a motion to dismiss, a simple answer, attend a 4 hour deposition (where I did the bulk of the questioning) and a mediation.  The range is between 7.5-13K.  I hereby offer 13K.  This offer is open for 1 day.  If your client does not take it I will voluntarily dismiss the matter and argue that Mr. Pelizzo is not entitled to any attorneys' fees.  Toward that end, be advised that Judge Seitz wrote an opinion about attorneys' fees and copyrights wherein she only awarded the *reasonable* fees incurred past the point of time where the plaintiff unreasonably pursed the claim.  This is consistent with the law in the 11th Circuit.  Further, the Copyright Act was specifically amended to increase the damages to encourage these types of suits.  Consequently, awarding fees to prevailing defendants in situations where the copyright owner did not press the matter beyond the point where it was reasonable to do so is not consistent with the policies underlying the Copyright Act.

On Monday, if the offer is not accepted, we will dismiss.

Best regards,
Keith

(Exhibit C)

The infringement from this IP address continued during the entire course of 2012 infringing twenty five separate movies a total of 548 times.  This is one of the worst incidents of

online copyright infringement undersigned's firm has ever seen. Plaintiff is the victim of massive infringement.

In *Oravec v. Sunny Isles Luxury Ventures L.C.*, 04-22780-CIV, 2010 WL 1302914 (S.D. Fla. Mar. 31, 2010) this Court held that attorney's fees were not warranted unless the Plaintiff pressed the matter beyond the point where it was reasonable to do so. "[T]he imposition of fees and costs should encourage 'the raising of objectively reasonable claims and defenses, which may serve not only to deter infringement but also to ensure that the boundaries of copyright law are demarcated as clearly as possible in order to maximize the public exposure to valuable works." *Id*.

Should the Court desire to entertain a motion for attorney's fees filed by Mr. Pelizzo, Plaintiff will prepare the appropriate opposition. Nevertheless, this matter should be dismissed as Plaintiff has no intention of pursuing Mr. Pelizzo to trial which would not be in the interest of either Plaintiff or Defendant, nor would it further the interests of the Copyright Act. And Defendant should be required to comply with Local Rule 7.3 prior to filing a motion for fees. L.R. 7.3(a) states:

> (a) Motions for Attorneys Fees and/or Non-Taxable Expenses and Costs. This rule provides a mechanism to assist parties in resolving attorneys fee and costs disputes by agreement. A motion for an award of attorneys fees and/or non-taxable expenses and costs arising from the entry of a final judgment or order shall not be filed until a good faith effort to resolve the motion, as described in paragraph (b) below, has been completed. The motion shall:
> (1) be filed within sixty (60) days of the entry of the final judgment or order giving rise to the claim, regardless of the prospect or pendency of supplemental review or appellate proceedings;
>  (5) provide:
> (A) the identity, experience, and qualifications for each timekeeper for whom fees are sought;
> (B) the number of hours reasonably expended by each such timekeeper;
> (C) a description of the tasks done during those hours; and
> (D) the hourly rate(s)claimed for each timekeeper;

      (6) describe and document with invoices all incurred and claimed fees and expenses not taxable under 28 U.S.C. § 1920;
      (7) be verified; and

For the forgoing reasons Plaintiff respectfully requests the Court dismiss the case.

Dated: May 23, 2013

                Respectfully submitted,

                By: /s/ *M. Keith Lipscomb*
                M. Keith Lipscomb (429554)
                klipscomb@lebfirm.com
                LIPSCOMB EISENBERG & BAKER, PL
                2 South Biscayne Blvd.
                Penthouse 3800
                Miami, FL 33131
                Telephone: (786) 431-2228
                Facsimile:  (786) 431-2229
                *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

      I hereby certify that on May 23, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

                By: /s/ *M. Keith Lipscomb*