**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**Case No. 1:12-CV-22768-CIV-SEITZ/SIMONTON**

| | |
|---|---|
| MALIBU MEDIA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LEO PELIZZO, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

### DEFENDANT'S VERIFIED MOTION FOR ATTORNEYS' FEES AND COSTS AGAINST PLAINTIFF AND LIPSCOMB, EISENBERG & BAKER, P.L.

Defendant Leo Pelizzo ("Defendant" or "Mr. Pelizzo"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 54(d)(2), Local Rule 7.3, 17 U.S.C. §505, and 28 U.S.C. §1920, §1927, hereby moves this Court for entry of an order awarding attorney's fees against Plaintiff and Lipscomb, Eisenberg & Baker, P.L.  In support thereof, Defendant states as follows:

## I.   BACKGROUND.

### A.   Plaintiff's Suit.

On July, 27, 2012, Plaintiff filed a boilerplate copyright infringement complaint alleging that Mr. Pelizzo had reproduced and distributed fourteen (14) pornographic works between January 3, 2012 and May 29, 2012. [Complaint, ¶2].  These allegations were prefaced upon the declaration of an unlicensed investigator located in Germany who – using proprietary software – had allegedly traced these activities to an Internet Protocol address ("IP Address") assigned to a Hotwire Communications' ("Hotwire") internet subscriber.  [Complaint, Exhibit C at ¶4].

Plaintiff then obtained a document from Hotwire correlating this IP Address to an apartment unit owned by Mr. Pelizzo.  This document failed to include the specific time of day – or even date – during which the IP Address had been assigned to Mr. Pelizzo's unit.  Plaintiff did not, however, follow-up with Hotwire regarding this ambiguity prior to bringing suit.  Plaintiff also filed suit before speaking to Mr. Pelizzo or any other individual associated with the 700-unit "physical address" referenced in its Complaint.

**B.  <u>Defendant's Response.</u>**

On August 20, 2012, Mr. Pelizzo – a 61-year old married man who had been out of the country since January 8, 2012 -- returned to the United States to find himself the subject of a public lawsuit identifying him as an unlawful consumer and distributor of films such as "*Pretty Back Door Baby*" and "*Anneli Leila Menage A Trois*".  Publicly humiliated, Mr. Pelizzo retained the undersigned law firm and expressed an ardent desire to clear his name in an equally public manner.  Accordingly, on September 21, 2012, Defendant filed a Motion to Dismiss Plaintiff's Complaint incorporating evidence that Mr. Pelizzo had been of the country from January 8, 2012 to August 20, 2012.[1]   This Motion also noted that Mr. Pelizzo's condominium association was the subscriber of the internet service in question and that Mr. Pelizzo had never dealt with Hotwire.  <u>See</u> [DE #7] and corresponding Affidavit of Leo Pelizzo (hereinafter "Pelizzo Affidavit").

On October 9, 2012, Plaintiff filed a response opposing Defendant's Motion to Dismiss.  Plaintiff did not express any desire to discuss this action prior to filing this response.  Two days later, however, Plaintiff's counsel emailed the undersigned and acknowledged the possibility that

---

[1]      Only one of the fourteen (14) works referenced in Plaintiff's Complaint was downloaded prior to January 8, 2012 and only two (2) of these works were registered with the Copyright Office prior to this date.

"(a) Hotwire gave us bad information; (b) someone was stealing your client's internet; or (c) your client is lying." [DE#39, Exhibit A].  Despite this uncertainty, Plaintiff subsequently filed a revised response unequivocally (1) asserting that the infringing activity was on-going; and (2) accusing Mr. Pelizzo of downloading six (6) additional pornographic works.

### C.  <u>The Hotwire Deposition.</u>

On October 23, 2012, Plaintiff's counsel sent the undersigned an email noting that "[o]ddly, the infringements are continuing on the same IP Address which was **previously** assigned to your client." <u>See</u> DE #39, p. 3 and Exhibit B.   This acknowledged Defendant's evidence that the infringing IP Address was not, at least as of September 10, 2012, assigned to Mr. Pelizzo's unit. <u>See</u> [DE #7, and Pelizzo Affidavit at ¶17.]   Plaintiff's counsel did not – despite this "oddity" – offer to dismiss the action.   He did, however, relay his intent to depose Hotwire to determine how Mr. Pelizzo had come to be associated with the infringing IP Address.

On December 21, 2012, Plaintiff provided Hotwire with notice of a 30(b)(6) deposition to be conducted on February 11, 2013.   On February 1, 2013, Plaintiff received -- unbeknownst to Defendant -- a document from Hotwire on February 1, 2013 stating (1) that "the current user of the IP in question is not Mr. Pelizzo"; and (2) that "if Mr. Pelizzo's PC or router is offline for more than 24 hours, the lease [of the IP Address] expires and may be assigned to another subscriber.[2] [DE #38, Exhibit A.]   Five (5) days later, Plaintiff cancelled the deposition scheduled for February 11, 2013.

Hotwire's corporate designee, Laurie M. Murphy, Esq. was finally deposed on March 12, 2013.  By this date, nearly five (5) months had elapsed since Plaintiff's concession that the infringing activities were continuing vis-à-vis an IP Address no longer associated with Mr.

---

[2]        Plaintiff was provided with this documentation on February 1, 2013 and did not provide the undersigned with these documents until March 12, 2013.

Pelizzo's unit.  Nevertheless, Plaintiff does not appear to have used this time to determine the identity of the actual infringer or otherwise substantively inquire about the information upon which his allegations relied.

As previously discussed in Defendant's Response to Plaintiff's Motion to Dismiss [DE#38], Ms. Murphy's testimony revealed a disconcerting number of holes in Hotwire's internal investigation and recordkeeping practices. See [DE #38, Exhibit A] Deposition of Laurie M. Murphy (hereinafter "Murphy Deposition").  Ms. Murphy, for example, testified:

(1) that "*Hotwire cannot definitively identify a subscriber*";[3]

(2) that the IP addresses allocated to Mr. Pelizzo's 700+ unit condominium building are assigned to the "*entire building*" – not individual units – and kept "*in a constant sort of mixing pod*";[4]

(3) that IP addresses not used for 24 hours – such as if "*someone goes on vacation*"[5] – "*just go back into the mix*";[6]

(4) that Hotwire's search had been limited to identifying the subscriber associated with the infringing IP Address on February 6th, 2012[7] (and, therefore, twenty-nine (29) days after Mr. Pelizzo had already been out of the country and not using his internet connection);

(5) that the aforementioned search was conducted without supervision by a "technician" that is no longer employed by Hotwire;[8]

(6) that Hotwire has no records or logs of this search and, therefore, cannot verify that the technician inputted the correct IP Address or hit dates;[9]

(7) that  Hotwire's  subscriber  information  is  provided  by  the

---

[3]       Murphy Deposition, p. 25, lns 5-17
[4]       Murphy Deposition, p. 24, lns 3-12; p. 41 lns 14-19.
[5]       Murphy Deposition, p. 24, lns 5-16, p. 31, lns 16-19, p.32, lns 4-24
[6]       Murphy Deposition, p. 24, lns 5-16.
[7]       Murphy Deposition, p. 45, lns 4-8.  It also bears noting that this date and time – even if accurately inputted – corresponded to download associated with only one of the works referenced in Plaintiff's Complaint.
[8]       Murphy Deposition, p. 55, lns 13-15; p. 57, lns 8-10
[9]       Murphy Deposition, p. 68, lns 11-23; p. 69, lns 11-18.

condominium building but that the accuracy of this information is not verified as "*individual details are not that important*";[10] and

(8) that, while internet ports assigned to individual units can be mislabeled, that Hotwire never made an effort to verify that Mr. Pelizzo's internet port had been correctly labeled[11]

Given the frequency and fervency with which Plaintiff has pursued legal action against individuals based upon information provided to it by Hotwire and other ISPs, it was surprising to notice that Plaintiff's counsel seemed to be asking these questions for the first time.

### D.  Subsequent Developments.

Plaintiff's counsel *now* concedes that the Hotwire deposition made it apparent "that *the error* very likely occurred from Defendant's building misreporting to Hotwire the condominium unit to which the subject IP address was assigned" [DE #39], p. 4.   Given the obviousness of this "error", the undersigned emailed Plaintiff's counsel on March 21, 2013 – nine (9) days after the deposition –with a request that Plaintiff (1) dismiss this action with prejudice; (2) file a statement publicly acknowledging that Mr. Pelizzo was incorrectly identified as an infringer of pornography; and (3) reimburse Mr. Pelizzo for the legal fees incurred as of that date.   Though he now concedes the existence of an "error", Plaintiff's counsel was in a far less conciliatory mood when he received the foregoing offer.   Specifically, only minutes after receiving Defendant's offer, Plaintiff's counsel -- incensed that a wrongfully-sued individual was requesting reimbursement of his legal fees -- lashed out with the following emails:

Sent March 21, 2013, 11:42 AM

Francisco,

---

[10]     Murphy Deposition, P.60, lns 3-5, 15-19, lns 20-23; P. 62, lns 11-19..
[11]     Murphy Deposition, p. 33, lns 21-25, p. 34, lns 2-5; P. 59 lns 15-18

Your offer is rejected.  I will see at you trial.

Best regards,
Keith

<u>Sent March 21, 2013, 12:18 PM</u>

Francisco,

I would like to depose Mr. Pelizzo during the first two weeks of April.  Please provide me with deposition dates.  If you do not, I will unilaterally set it . . . .  Respectfully, you should counsel [your client] that when he loses, he will lose everything he owns and owe my clients hundreds of thousands of dollars.  Mark these words, your client's decision to reject a walk away will be the worst decision he will ever make. . . .

Thanks,
Keith

<u>See</u> Exhibit A.

On March 22, 2013, Plaintiff's counsel made good on his threat to continue prosecuting this action against an innocent party by serving Defendant with Interrogatories and Requests for Production. <u>See</u> Exhibits B and C.  Mr. Pelizzo, thereafter, travelled to the United States and incurred the costs associated with a mediation scheduled for April 4, 2013.  Though this mediation failed to result in a settlement, Plaintiff eventually moved to dismiss its action on April 26, 2013.

**II.**      **<u>LEGAL ANALYSIS</u>**

As discussed above, Plaintiff blindly relied on a string of numbers in branding Mr. Pelizzo a distributor of pornographer.  Plaintiff continued pursuing this action seven months after (1) receiving visa and passport documentation evidencing Mr. Pelizzo's absence from the country; and (2) learning that the complained-of infringing activities were continuing under an IP address that did not match Defendant's IP address.  Following testimony that -- in his own words

-- revealed the source of "*the erro*r",[12] Plaintiff initiated a strategic effort to ratchet up Mr. Pelizzo's prior to a scheduled mediation by serving discovery and threatening to pursue the action and leave Mr. Pelizzo destitute.   As a result, the undersigned firm was required to prepare and file several motions and an answer, review Plaintiff's discovery requests, attend a deposition, prepare a mediation report and attend a mediation conference.

Despite the foregoing, Plaintiff boldly concludes that this "case should not have required Defendant's counsel to bill more than $2,000."  [DE #39, p. 5.]   Plaintiff supports this position by contending that "at no time during this litigation did Plaintiff ever make a monitory *[sic]* demand to Mr. Pelizzo." [DE #39, p.5]  This statement ostensibly excludes the monetary demand made within Plaintiff's Complaint.  It also, presumably, discounts Plaintiff's March 21st email in which he respectfully advised the undersigned to "counsel [Mr. Pelizzo] that when he loses, he will lose everything he owns and owe my clients hundreds of thousands of dollars."  <u>See</u> Exhibit A.

In order to absolve himself of blame, Plaintiff's counsel weaves a revisionist narrative in which he reluctantly and half-heartedly pursued legal action against Mr. Pelizzo.  In a statement that exhibits a small child's sense of entitlement, Plaintiff suggests – without a trace of irony -- that this misunderstanding could have been avoided had Mr. Pelizzo simply contacted the Plaintiff to inform him that he had been out of the country.  <u>See</u> DE #39, p.5.   No mention, however, is made of the possibility of Plaintiff's counsel waiting to speak to an individual prior relying on a string of numbers to file an individual suit.  Nor of how this could have turned out differently considering Plaintiff's decision to pursue this action seven (7) months after learning these very facts.    Accordingly, as discussed below, Defendant respectfully submits that

_____

[12][DE #39], p. 4.

Plaintiff's actions entitle Defendant to an award of attorneys' fees and expenses, in addition to any other sanctions the Court may deem appropriate.

### A. The Legal Standard for Granting Fees Pursuant to 17 U.S.C. § 505

While litigants must generally bear their own attorney's fees, Section 505 of the Copyright Act provides an exception for the prevailing party in a copyright action.  Specifically, Title 17 U.S.C. § 505 provides that:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

The Defendant, in light of Plaintiff's voluntary dismissal with prejudice, is considered the prevailing party in this action. See Mathews v. Crosby, 480 F.3d 1265, 1276 (11th Cir. Fla. 2007); see also Riviera Distribs. v. Jones, 517 F.3d 926, 928 (7th Cir. Ill. 2008).   Awards of attorney's fees in the copyright context – while discretionary –"are the rule rather than the exception and should be awarded routinely." Arista Records, Inc. v. Beker Enterprises, Inc., 298 F. Supp. 2d 1310, 1316 (S.D. Fla. 2003) (quotations and citations omitted)).   This is true regardless of whether the prevailing party is the defendant or the plaintiff.  Fogerty v. Fantasy, Inc., 510 U.S. 517, 523 (1986) (noting that there is "no support for treating prevailing plaintiffs and defendants differently with respect to the recovery of attorney's fees.")

The Eleventh Circuit has, in this respect, emphasized that the "only preconditions to an award of fees is that the party receiving the fee be the 'prevailing party' and that the fee be reasonable.'" Mitek Holdings, Inc. v. Arce Engineering Co., 198 F. 3d 840, 842 (11th Cir. 1999) (citing Original Appalachian Artworks, Inc. v. Toy Loft, Inc., 684 F.2d 821, 832 (11th Cir. 1982)).  However, the Supreme Court has enumerated four non-exclusive factors relevant to a

§505 analysis, namely: (1) frivolousness; (2) objective unreasonableness; (3) motivation; and (4) the need in particular circumstances to advance considerations of compensation and deterrence. Fogerty., 510 U.S. at 534.

### 1. Frivolousness and Objective Reasonableness of Plaintiff's Arguments

Determining whether a case is frivolous is made on a case by case basis.  See Baby Buddies, Inc. v. Toys "R" Us, Inc., 2011 U.S. Dist. LEXIS 106678 (M.D. Fla. Sept. 20, 2011). In determining whether a case is frivolous, the Court considers: (1) whether plaintiff established a prima facie case; (2) whether defendant offered to settle; (3) whether the court dismissed the case prior to trial or held a full-blown trial on the merits. Bruce v. City of Gainesville, Ga., 177 F.3d 949 (11th Cir. 1999).   In order to prove its direct copyright infringement claim, Plaintiff was required to prove that Defendant copied constituent elements of the alleged work that were original. Calhoun v. Lillenas Publ'g, 298 F.3d 1228, 1232 (11th Cir. 2002).  A plaintiff must also prove that a defendant engaged in volitional conduct - specifically, the act constituting infringement - to be considered a direct infringer. See Disney Enters. v. Hotfile Corp., 798 F. Supp. 2d 1303, 1306 (S.D. Fla. 2011).

Plaintiff's claim of direct copyright infringement was based upon the allegation that "[a]s the subscriber of the Internet service being used to distribute Plaintiff's copyrighted movies, Defendant is the most likely infringer." [Complaint, ¶23].   Plaintiff itself has acknowledged that "IP addresses are routinely assigned to different people [which] is why Plaintiff provides ISPs with the exact time that the infringement occurred." See [DE #13, p.6.]  Nevertheless, Plaintiff filed suit against Mr. Pelizzo based upon a communication containing no details as to (1) the specific date(s) and time(s) that Mr. Pelizzo's account was correlated to the IP Address; or (2)

the specific date(s) and time(s) inputted as part of the search query. See DE # 13, Exhibit B. Despite the ambiguity of Hotwire's response, and despite Plaintiff's knowledge that IP Addresses are routinely assigned to different accounts, Plaintiff made no effort to contact Hotwire to verify that the search had targeted the relevant dates of infringement.   If he had, he would have learned (1) that Hotwire's general counsel had never, despite signing the response to Plaintiff's subpoena, known the date or time used to trace the infringing IP Address; and (2) that Hotwire maintained no records of or details about search. See Murphy Deposition, p. 68, lns 11-23; p. 69, lns 11-18.   Moreover, despite claiming that fourteen (14) pornographic works were allegedly infringed between January 3, 2012 and May 29, 2012, Plaintiff's subpoena to Hotwire limited the requested search to February 6th, 2012, a date (1) corresponding to the infringement of only one of the works; (2) that took place nearly a month after Mr. Pelizzo left the country. See [DE #1, Exhibit B] and the *Murphy Deposition,* Exhibit F.

In short, Plaintiff filed its action despite any evidence that Defendant had taken "direct volitional steps" to copy Plaintiff's works. See Disney Enters. v. Hotfile Corp, 798 F. Supp. 2d at 1308.   Plaintiff also does not appear to have taken any steps to verify that its unlicensed investigator in Germany entered the correct data, tracked the correct torrent file(s), or did not otherwise err in compiling his search results.   Similarly, there is no information available as to the reliability or accuracy of the "proprietary software" that was used to obtain the allegedly infringing IP address.   See, e.g., Celestial Inc. v. Swarm Sharing Hash, 2012 U.S. Dist. LEXIS 61058 (C.D. Cal. May 1, 2012) (noting that Plaintiff failed to "make any representations as to the reliability or level of accuracy of IP address geo-location tools" and provided no "details regarding the tools used or the results.").

Defendant was amenable to – and repeatedly offered to – settle this matter upon (1) the filing of a public statement acknowledging that Mr. Pelizzo had been incorrectly identified; and (2) the reimbursement of Mr. Pelizzo's legal fees.  Alternatively, Plaintiff could have minimized Defendant's expenses by dismissing its action voluntarily at any time prior to the filing of Defendant's Answer on February 22, 2013.  Instead, Plaintiff brought this suit and continued to pursue it (1) without receiving or, thereafter, requesting the specific dates and times that Hotwire traced the infringing IP Address to Mr. Pelizzo's unit; (2) without requesting any information as to the internet usage activity associated with Mr. Pelizzo's unit; (3) without any knowledge of or inquiry into Hotwire's subscriber model or distribution of IP Addresses; (4) without ever speaking to Mr. Pelizzo; and (5) without ever speaking to a representative of the actual internet subscriber at issue, namely, the Quantum of the Bay condominium association.

## 2. *Objective Reasonableness*

Plaintiff also continued aggressively pursuing this action well after it was objectively reasonable to do so. See Oravec v. Sunny Isles Luxury Ventures, L.C., 2010 U.S. Dist. LEXIS 32390 at *23 (11th Cir. 2010) (noting the "objective reasonableness" analysis considers the "reasonableness of Plaintiff's claims at the time [it] 'took the stance at issue' or at the time [it] 'pressed' his arguments.")  Plaintiff could have dismissed its action after learning, on September 21, 2012, that Defendant had been out of the country for nearly all the relevant dates of infringement or, on March 12, 2013, when it learned that Hotwire made a practice of re-assigning IP Addresses assigned to a user once that user had been inactive for over twenty-four (24) hours.  See Murphy Deposition, p. 45, lns. 4-8; See Pelizzo Affidavit, ¶5.  Instead, despite the overwhelming gaps of evidence discussed above, Plaintiff continued to pressing forward in an attempt to coerce a settlement agreement from an innocent party.

11

### 3.  *Plaintiff's Subjective Motivation*

The fact Plaintiff's behavior was motivated by a desire for commercial gain also weighs in favor of a fee and cost award to the Defendant. See Sherry Mfg. Co. v. Towel King of Florida, Inc., 822 F.2d 1031, 1035 (11th Cir. 1987) (finding the plaintiff had "initiated a predatory lawsuit for commercial gain.").  An allegation that an individual has illegally downloading obscene films (these films have titles such as "Angel Seaside Romp" and "Pretty Back Door Baby") will, whether true or not, irreversibly tarnish an individual's reputation.  In addition to straining relationships with family and friends, the public filing of such an allegation – even if never proven – will adversely affect an individual's career, business, and reputation. Consequently, it is not surprising that many individuals – innocent or not – often opt to pay a few thousand dollars rather than risk the filing of a public suit.

Given the foregoing, it comes as no surprise that Plaintiff has gained notoriety for its aggressive litigation strategies and that an Internet search for "Malibu Media" garners results consisting almost exclusively of references to Plaintiff's litigious nature.  Last year, for example, the Eastern District of New York denounced Malibu's use of "federal district courts as small claims collection agencies [to put] economic pressure on individuals who do not have substantive liability." See In re BitTorrent Adult Film Copyright Infringement Cases, 2012 WL 1570765 (E.D.N.Y. May 1, 2012).  The Central District of California echoed similar misgivings when it stated that "the Court will not idly watch what is essentially an extortion scheme." See Malibu Media, LLC v. John Does 1-10, No. 12-3623, 2012 WL 5382304, at 4 (C.D. Cal. June 27, 2012).

Plaintiff's counsel attempts to absolve himself and shift blame to the Defendant by providing this Court with a series of self-serving emails containing half-truths and outright

misrepresentations.   Plaintiff's counsel, for example, falsely claims that he contacted the undersigned firm prior to the filing of Defendant's Motion to Dismiss (and, therefore, before the undersigned firm ever entered an appearance in this action.) See [DE #39], p. 3.  In reality, Plaintiff's first communication to the undersigned was a last-minute request, sent October 8, 2012, that the undersigned consent to an extension Plaintiff's deadline to file a Response to Defendant's Motion to Dismiss. See Exhibit D.  The email relayed an overwrought story about a burst water pipe that had decimated walls, ruined carpets, "destroyed the entire top four floors of our building," and – *ten days earlier*-- forced Plaintiff's counsel to "unplug" his work computer. See Exhibit D.  It did not, however, make any mention of the facts set forth in Defendant's Motion or express any interest in discussing this case.

On October 16, 2012, Plaintiff filed a response stating that that "Defense counsel refuses to take Plaintiff's call or return voice messages." [DE #13, p.2].  Amusingly, Plaintiff's counsel had – a day earlier –forgotten to attend a telephone conference he had scheduled for October 15th with the undersigned.  See Exhibit E.   Further, several hours before Plaintiff's filing of this statement, the undersigned had sent an email to Plaintiff's counsel attempting to re-schedule the call.  See Exhibit E.   Plaintiff's counsel failed to respond to this email prior to filing its Response and, in fact, failed to respond until October 22nd when the undersigned once again followed up about the matter.

Throughout this proceeding, Plaintiff continued to drag its feet.  Plaintiff cancelled and postponed the Hotwire deposition for eight (8) months after it filed its Complaint and does not, at any point prior to this time, appear to have conducted any investigation or inquiry into the discrepancy between the infringing IP Address and Mr. Pelizzo's account.  Plaintiff's behavior, in sum, consistently "indicate[d] a motivation to enlarge … profits to increase [the] potential

13

recovery for copyright infringement." <u>Oravec v. Sunny Isles Luxury Ventures, L.C.</u>, 2010 U.S. Dist. LEXIS 32390 at *18 (11th Cir. 2010)(citations omitted).

4.  ***Considerations of Compensation and Deterrence.***

"A party that asserts unreasonable or bad faith arguments should be deterred from doing so by paying the fees and costs the prevailing party incurred."  <u>Oravec</u>, 2010 U.S. Dist. LEXIS 32390 at *33 (citing <u>Luken v. International Yacht Council, Ltd</u>., 581 F. Supp. 2d 1226, 1239-40. This is particularly true here, where Defendant's defense involved circumstances that, at least within this Circuit, are "composed on a virtually blank slate." <u>Oravec</u>, 2010 U.S. Dist. LEXIS 32390 at *34; <u>see</u> <u>Collins v. Doe 1</u>, 2013 U.S. Dist. LEXIS 71122, 11-13 (E.D.N.Y. May 18, 2013)(stating that "[b]efore the Court embarks on its analysis, it is important to understand that this case is not being litigated in a vacuum. Indeed, the issue presented here has been the subject of a lively debate in many respects, both in the judicial system and across the internet.")

Plaintiff filed this suit by blindly relying on an IP Address that —alone— was incapable of identifying the infringing party. <u>See</u> <u>Ingenuity 13 LLC</u>, 2013 U.S. Dist. LEXIS 64564 at *10 ("Plaintiffs can only show that someone, using an IP address belonging to the subscriber, was seen online in a torrent swarm.")  It bears noting that Plaintiff could have asked Hotwire for the media access control address ("MAC Address") associated with the infringement.  A MAC Address is a unique identifier capable of identifying a physical device and, therefore, tying an IP address to a device in an account holder's possession. <u>See, e.g.,</u> "MAC Addressing", About.Com,   http://compnetworking.about.com/od/networkprotocolsip/l/aa062202a.htm   (last accessed June 27, 2013).  Hotwire has testified that it would have provided Plaintiff with this information had it been requested.   <u>See</u> *Deposition of Laurie M. Murphy*, P. 73, lns. 7-25; p.74 1-9.   Despite Plaintiff's knowledge that the infringing IP Address could have been used by any

number of wireless and mobile devices located in the 700-unit "physical address" referenced in Plaintiff's Complaint, it never sought this information. See *Deposition of Laurie M. Murphy*, P. 73, lns. 7-25; p.74 1-9; see also Digital Sin, Inc., 279 F.R.D. at 242 (noting that "Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material.")

Plaintiff's unreasonable claims, coupled with its pecuniary motivation, warrant the impositions of fees and costs as a deterrent measure to future litigants. Specifically, "future copyright holders should be deterred from initiating costly litigation without first attempting non-judicial resolution . . . [and from] pursuing causes of action . . . after discovery has proved them unreasonable." Oravec, 2010 U.S. Dist. LEXIS 32390 at *35.   This is particularly true here where Plaintiff and its ilk have taken advantage of the complexity and novelty of internet technology in order to profit from tenuous legal claims.   Accordingly, Defendant respectfully requests compensation of "expenses incurred in this vexatious lawsuit."  See Ingenuity 13 LLC, 2013 U.S. Dist. LEXIS 64564 at *15 (also doubling defendants award and noting "[t]his punitive multiplier is justified by Plaintiffs' brazen misconduct.")

**B.  The Legal Standard for Granting Fees Pursuant to 28 U.S.C. § 1927**

For the reasons discussed above, Defendant also seeks an award of attorney's fees against Plaintiff's counsel, Lipscomb Eisenberg & Baker, PL, pursuant to 28 U.S.C. § 1927. Specifically, 28 U.S.C. §1927 provides that:

> An attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

An attorney is considered to have "multiplied proceedings" where "the attorney's conduct

is so egregious that it is tantamount to bad faith." <u>Amlong & Amlong , P.A. v. Denny's Inc.</u>, 457 F.3d 1180, 1190 (11th Cir. 2006) (noting that the attorney's actions should be compared with the conduct of a reasonable attorney.)  This standard is met where an attorney must knowingly or recklessly pursues a frivolous claim. <u>Id</u> at 1193; <u>see also</u> <u>Avirgan v. Hull</u>, 932 F.2d 1572 (11th Cir. 1991) (noting that the attorney's conduct must be tantamount to bad faith).   The Eleventh Circuit has stated that "[t]he obligation to answer for one's act accompanies the act; a lawyer cannot absolve himself of responsibility by dismissing his client's suit." <u>Matthews v. Gaither</u>, 902 F.2d 877, 880 (11th Cir. 1990)(retaining jurisdiction to sanction a plaintiff that filed an action in bad faith, misrepresented material facts to the court, and then filed a notice of voluntary dismissal to evade sanctions.)

As discussed above, Plaintiff filed its action against Mr. Pelizzo without conducting a reasonable pretrial investigation and without any factual basis supporting its conclusory legal claims.  Plaintiff, thereafter, continued to actively pursue its claims against Mr. Pelizzo well after tacitly acknowledging that Mr. Pelizzo was not the infringing party.  <u>See</u> <u>Torres v. City of Orlando</u>, 264 F. Supp. 2d 1046, 1053 (M.D. Fla. 2003) (finding a lawyer engaged in bad faith by filing and prosecuting claims lacking any plausible legal or factual support).   Plaintiff has, in a few short years, achieved a level of notoriety that has prompted various courts to express concerns about its tactics.  <u>See, e.g.,</u>  <u>Malibu Media, LLC v. Doe</u>, 2012 U.S. Dist. LEXIS 110668, at *6-7 (M.D. Fla. Aug. 7, 2012) (requiring Plaintiff to "inform each John Doe defendant of the potential for sanctions under Rule 11, Fed. R. Civ. P., if the John Doe defendant is incorrectly identified."); <u>In re BitTorrent Adult Film Copyright Infringement Cases</u>, 2012 U.S. Dist. LEXIS 61447, at *9 (E.D.N.Y. 2012) (unambiguously expressing concerns to Malibu Media, LLC and its counsel "that many of the names and addresses produced in response to

Plaintiff's discovery request will not in fact be those of the individuals who downloaded "My Little Panties # 2.")   Consequently, for the reasons discussed above, Defendant submits that Plaintiff's egregious conduct warrants an award of fees pursuant to 28 U.S.C. § 1927.

## C.   The Legal Standard for Determining Attorney's Fee Awards

The Eleventh Circuit's current standards for measuring attorney's fees are set out in Norman v. Housing Auth. of the City of Montgomery, 836 F.2d 1292, 1298-1301 (11th Cir. 1988) (reiterating that a fee award should be based upon a multiplication of a reasonably hourly rate by the number of reasonable hours billed.)   A reasonable hourly rate may be calculated by "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." See Id. at 1299.  Multiplying this rate by the number of "reasonable hours" expended on the matter results in a "lodestar" that can, thereafter, be increased or decreased based on factors such as the quality of the representation and the results obtained. Id. at 1299-1302.

### 1.   Establishing A Reasonable Hourly Rate and Number of Hours

The "going rate" in the legal community is the most critical factor in determining a reasonable fee. Martin v. University of South Alabama, 91 F.2d 604, 610 (11th Cir. 1990); Brooks v. Georgia State Bd. of Elections, 997 F.2d 857, 868-69 (11th Cir. 1993)(defining the pertinent "legal community" as the city where the moving attorney has its office.). "Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." Id.

The prevailing party need only submit evidence indicating what the hours worked were. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  The attached documentation of Defense counsel's time records indicate that the total fees incurred by Mr. Pelizzo between August 23,

2012 and May 31, 2013 were $22,261.25. See Exhibit F   The vast majority of this figure, $18,877, corresponds to work conducted by the undersigned at an hourly rate of $215.00 per hour.[13] The fees incurred since May 31, 2013, including the time spent preparing this Motion, amount to $6,931.50. See Thompson v. Pharmacy Corp. of Am., Inc., 334 F.3d 1242, 1244-46 (11th Cir. 2003)(noting that fees attributable to time spent litigating the issue of attorneys' fees are also fully compensable.)

Undersigned counsel has, since May 2007, concentrated his practice exclusively on intellectual property litigation and intellectual property matters before the United States Patent & Trademark Office Trademark Trial and Appeal Board. See Exhibit G, *Affidavit of Francisco Ferreiro*. By way of comparison, the most recent "Report of Economic Survey" by the American Intellectual Property Law Association indicates $306.00 as the average rate for an associate with 5-6 years of intellectual property experience in private counsel. See Exhibit H. Accordingly, the majority of billing in this matter was performed at an hourly rate nearly $100.00 lower than the average charged by similarly qualified attorneys. The reasonableness of the lodestar figure of $29,192.75 is further evidenced by considering the complexity and novelty of the issues involved and the fact that Mr. Pelizzo's defense required the preparation of several motions, attendance of a deposition, and attendance of a mediation conference. See Exhibit I, *Affidavit of Stephen J. Kolski, Esq.*

   **2.   *Adjusting the Lodestar***

The Court may adjust the lodestar upward or downward to reflect a number of different factors, including, (1) the novelty and difficulty of the legal question involved; (2) the skill required to perform the legal services properly; and (3) the amount involved and the results

---

[13] The remaining fees are primarily attributable to John Cyril Malloy, III ($945 at a rate of $450.00 per hour); and Tony Guo, Esq. ($2,008.00 at a rate of $195.00 per hour). See Exhibit G.

obtained. <u>See</u> <u>Manriquez v. Manuel Diaz Farms, Inc.</u>, 2002 WL 105033 1, * 10 (S. D. Fla. 2002) (citing <u>Kay</u>, 176 F.3d at 1327).   In order to properly perform its duties, Defendant's counsel was required to familiarize itself with fairly complex and novel technologies and legal issues that, at least within this Circuit, are "composed on a virtually blank slate." <u>Oravec</u>, 2010 U.S. Dist. LEXIS 32390 at *34.    Given the foregoing, Defendant submits that the circumstances surrounding this action warrant an upwards adjustment of the lodestar figure, as well as an award of interest accrued on Defendants' attorneys fees since the date of judgment.   <u>See</u>, e.g., <u>Copper Liquor, Inc. v. Adolph Coors Co.</u>, 701 F.2d 542 (5th Cir. 1983) (interest awarded on fees from date of original judgment); and <u>Finkelstein v. Bergua</u>, 804 F. Supp. 1235, 1240 (N.D. Cal. 1992).

## IV.   <u>CONCLUSION</u>.

For the reasons discussed above, Defendant hereby moves for entry of an Order awarding Defendant his reasonable attorneys' fees and expenses incurred in defending this action.

Respectfully submitted,

Dated: July 1, 2013
    Miami, Florida

By: <u>s/Francisco J. Ferreiro</u>
Francisco J. Ferreiro
Florida Bar No. 37,464
fferreiro@malloylaw.com
MALLOY & MALLOY, P.A.
2800 S.W. Third Avenue
Miami, Florida  33129
Telephone (305) 858-8000
Facsimile (305) 858-0008

Attorneys for Defendant

## <u>CERTIFICATE OF GOOD FAITH CONFERENCE</u>

On June 10, 2013, the undersigned served Plaintiff's counsel with a copy of billing statements reflecting the fees incurred by Defendant through May 31, 2013.   Pursuant to Rule 7.3, the parties have discussed the relief sought herein but have been unable to resolve the matter by agreement.

s/ Francisco J. Ferreiro
Francisco J. Ferreiro
Florida Bar No. 37,464

## <u>VERIFICATION OF COUNSEL</u>

In accordance with Southern District of Florida Local Rule 7.3, I verify under penalty of perjury that the foregoing is true and correct. Executed on July 1, 2013.

s/ Francisco J. Ferreiro
Francisco J. Ferreiro
Florida Bar No. 37,464

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 1st, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

s/ Francisco J. Ferreiro
Francisco J. Ferreiro
Florida Bar No. 37,464

## <u>SERVICE LIST</u>

### Case No. 1:12-CV-22768-CIV-SEITZ/SIMONTON

M. Keith Lipscomb (429554)
klipscomb@lebfirm.com
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile: (786) 431-2229


*Counsel for Plaintiff*
Notices of Electronic Filing
Generated by CM/ECF