**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
|     Plaintiff, | ) | Civil Action Case No.: <u>1:12-cv-22768-PAS</u> |
| | ) | |
| v. | ) | |
| | ) | |
| LEO PELIZZO, | ) | |
| | ) | |
|     Defendant. | ) | |
| _____ | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION**
**<u>TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES</u>**

## TABLE OF CONTENTS

I.      INTRODUCTION ...........................................................................................................1

II.     ISSUES FOR ADJUDICATION ...............................................................................1

III.    FACTUAL BACKGROUND .....................................................................................1

    A.  Malibu Media Filed This Suit in Good Faith and With a Proper Purpose .......................1

        1.  Malibu Is Being Damaged By BitTorrent Copyright Infringement..............................1

        2.  Malibu Makes Substantially All of Its Money Through Subscription Sales .................2

        3.  IPP, Ltd.'s Technology Has Been Independently Tested And Works ..........................2

        4.  The Subject IP Address Was Used By A Serial Infringer...........................................3

        5.  ISPs' Correlations Are Almost Always Accurate.......................................................3

        6.  Hotwire Communications Said It Assigned the Subject IP Address to Defendant ..................3

        7.  Prior to Filing Suit, Plaintiff Attempted to Contact Defendant Numerous Times......................4

        8.  Plaintiff Had a Proper Purpose to File Suit ................................................................4

    B.  Plaintiff Acted Reasonably And Defendant Acted Unreasonably ...................................4

        1.  Without First Talking to Plaintiff, Defendant Drafted a Frivolous 12(b)(6) Motion..................4

        2.  Right Away, Plaintiff Advised Defendant It Would Not Push For A Settlement ......................5

        3.  Malibu Advised Defendant NOT to Spend Money On this Matter; And, That After Hotwire's Deposition Defendant Would Likely Be Dismissed .................................................................5

        4.  Malibu Had a Proper Purpose For Deposing Hotwire ...............................................5

        5.  To Reduce Defendants' Fees Plaintiff Did Defendants' Work .................................5

        6.  Plaintiff Scheduled Hotwire's Deposition To Coincide with Other Depositions ......................5

        7.  Plaintiff Learned How and Why Hotwire Made a Correlation Error.........................6

        8.  Plaintiff Offered To Voluntarily Dismiss Defendant Immediately After the Hotwire Deposition ........................................................................................................................6

        9.  Defendant Unreasonably Demanded $17,500 In Attorneys' Fees..............................6

        10.  The Mediation Focused On How Much Plaintiff Would Pay in Fees ........................6

        11.  Malibu Offered $13,000 for Fees ............................................................................6

        12.  Defendant Would Not Stipulate to Being Voluntary Dismissed With Prejudice ..................7

IV.     LEGAL STANDARD ...................................................................................................7

V.      ARGUMENT .................................................................................................................8

    A.  Attorney Fees Should Not Be Awarded ...........................................................................8

        1.  Deposing Hotwire Advanced Copyright's Interests In Accurate ISP Correlations ..................8

2.  Deposing Hotwire Advanced Copyright's Interests In Deterring Infringement .......................... 8

3.  The Four *Fogerty* Factors Weigh Against Awarding Attorney's Fees ....................................... 9

    a.  Plaintiff's Claims Were Not Frivolous ................................................................. 9

    b.  Plaintiff's Motivation Was Proper ....................................................................... 9

    c.  Plaintiff's Actions Were Reasonable .................................................................. 10

    d.  Compensating Defendant Will Not Further the Purposes of the Copyright Act ................... 11

    e.  Deterring Plaintiff Is Unnecessary ...................................................................... 11

    f.  Other Considerations Make An Award of Fees Inequitable ................................................ 11

B.  Even If The Court Finds Defendant is Entitled To Some Fees, The Court Should Dramatically Reduce The Amount Requested ................................................................................................. 12

   1.  Law Governing Proper Fee Petitions ........................................................................ 12

   2.  Explanation For A Reasonable Fee for The Necessary Work In this Matter ............................ 12

   3.  Summary of Defendant's Unreasonable Fees ............................................................... 13

   4.  The Overwhelming Majority of Defendant's Fees Were Unnecessary, Excessive, Duplicative or Fraudulent ........................................................................................................ 14

    a.  Defendant's 12(b)(6) Was Unnecessary, Frivolous And Inconsistent With the Purposes of the Copyright Act ................................................................................................... 14

    b.  Defendant's Opposition To Plaintiff's Motion to Strike Was Unreasonable ......................... 15

    c.  Defendant's Opposition to Plaintiff's Motion to Dismiss Him Was Unreasonable .............. 15

    d.  The 1st Year Associate's Services Were Unnecessary And His Rate Excessive ................. 15

    e.  Defense Counsel Spent An Unreasonable Amount of Time Preparing for Mediation ........... 16

    f.  Staffing Four Attorneys (Including One Unidentified Attorney) on this Matter Was Unreasonable ...................................................................................................... 16

    g.  The Invoices Demonstrably Establish Fraudulent Overbilling ............................................. 17

   5.  Defense Counsel Charge For Clerical Work At Attorney Rates and Seek To Recover For "Block Entries" Commingling Attorney and Clerical Work ...................................................... 17

   6.  Defendant Should Not Be Awarded Any Fees Following Malibu's $13,000 Offer ................. 18

   7.  Defendant Improperly Seeks Reimbursement of Expenses ............................................... 18

C.  Defendant's Request for Sanctions Under 28 U.S.C. § 1927 Is Frivolous .................................. 19

VI.  CONCLUSION ............................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001) ................................19

*Abbott Laboratories v. Granite State Ins. Co.*, 104 F.R.D. 42, 43 (N.D. Ill. 1984) ....................23

*Abreu v. Alutiiq-Mele, LLC*, 2012 WL 4369734 at *15 (S.D. Fla. 2012) ....................................24

*Accord MiTek Holdings, Inc. v. Arce Eng'g Co., Inc.*, 198 F.3d 840, 842-43 (11th Cir. 1999)....12

*AF Holdings, LLC v. Does 1-1,058* 286 FR.D 39, 47 (D.D.C. 2012)..........................................13

*Alexander v. Chesapeake*, 60 F.Supp.2d 544 (E.D. Va. 1999)....................................................16

*Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999)................17

*Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007)........................24

*Arista Records, Inc. v. Beker Enterprises, Inc.*, 298 F.Supp.2d 1310 (S.D. Fla. 2003)...............12

*Arista Records, LLC. v. Doe 3*, 604 F.3d 110 (2d Cir. 2010).....................................................19

*Corsair Asset Mgmt., Inc. v. Moskovitz*, 142 F.R.D. 347, 353 (N.D. Ga. 1992).........................24

*Dillard v. City of Greensboro*, 213 F.3d 1347, 1353, 1356 (11th Cir. 2000).............................17

*Doria v. Class Action Servs., LLC*, 261 F.R.D. 678, 686 (S.D. Fla. 2009)................................24

*Dream Custom Homes, Inc. v. Modern Day Const., Inc.*, 8:08-CV-1189-T-17AEP, 2011 WL 7764999 (M.D. Fla. July 12, 2011)...........................................................................................23

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 n. 19 (1994)...........................................................12

*Fogerty,* 510 U.S. at 534 n. 19, 114 S.Ct. at 1033 n. 19 .............................................................12

*Gilfand v. Planey*, 2012 WL 5845530, at *16 (N.D. Ill. 2012).................................................23

*In re Aimster Copyright Litigation*, 334 F.3d 643 (7th Cir. 2003) .............................................19

*In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 WL 1570765 (E.D.N.Y. 2012) ...............................................................................................................................................15

*In re Charter Communications, Inc. Subpoena Enforcement Matter*, 393 F.3d 771, 774 (8th Cir. 2005)........................................................................................................................................19

*Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1375, 1377 (M.D. Fla. 2010)............21

*Luken v. International Yacht Council, Ltd.*, 581 F.Supp.2d 1226, 1239 (S.D. Fla. 2008)...........12

*Luken v. Int'l Yacht Council, Ltd.*, 581 F. Supp. 2d 1226, 1245 (S.D. Fla. 2008).......................14

*Machado v. Da Vittorio, LLC*, 2010 WL 2949618 (S.D. Fla. July 26, 2010) .............................22

*Malibu Media, LLC v. John Doe*, Civil Action No. 13-CV-00307, CM/ECF 36 at p. 5, (Colo. 2013).................................................................................................................................7, 16

*Malibu Media, LLC v. John Does 1, 6, 13, 14*, 2013 WL 3038025 (E.D. Pa. 2013)...............7, 14

*Malibu Media, LLC v. John Does 1-10*, 2012 WL 5382304, at 4 (C.D. Cal. 2012)....................15

*Malibu Media, LLC v. John Does 1-48*, 2012 WL 6867308 (M.D. Fla. 2012)............................15

*Malibu Media, LLC v. John Does 1-5,* 2012 WL 3641291 (S.D. N.Y. 2012) ..............................15

*Malibu Media, LLC v. John Does 1-6, 2013 WL 2150679 (N.D. Ill. 2013)*................................15

*Malibu Media, LLC v. Pelizzo*, 2012 WL 6680387 (S.D. Fla. 2012) ..........................................14

*Mannings v. Sch. Bd. of Hillsborough Cnty., Fla.*, 826 F. Supp. 1404, 1411 (M.D. Fla. 1993)...19

*Manriquez v. Manuel Diaz Farms, Inc.*, 2002 WL 1050331 (S.D. Fla. May 23, 2002)..............22

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.* 545 U.S. 913, 125 S.Ct. 2764 (2005).......19

*Moriarty v. Svec*, 233 F.3d 955, 967 (7th Cir. 2000)..................................................................23

*Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) ..............17

*Oravec v. Sunny Isles Luxury Ventures, L.C.*, 2010 WL 1302914, *3 (S.D. Fla. 2010) .............12

*Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir.1997)...........................................24

*Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary*, 108th Cong. (2003) ...........................................................................................14

*Powell v. Carey Int'l, Inc.*, 547 F. Supp. 2d 1281, 1293, 1294, 1295-96 (S.D. Fla. 2008) *aff'd,* 323 F. App'x 829 (11th Cir. 2009) ...................................................................................20, 22

*R.L. v. Miami-Dade Cnty. Sch. Bd.*, 07-20321-CIV, 2013 WL 2157156 (S.D. Fla. May 17, 2013) ..........................................................................................................................................24

*RIAA v. Verizon Internet Services, Inc.,* 351 F.3d 1229, 1238 (D.C. Cir. 2003).........................20

*Rodriguez v. Super Shine & Detailing, Inc.*, 09-23051-CIV, 2012 WL 2119865 (S.D. Fla. June 11, 2012) ........................................................................................................................19

*Smith v. Reliance Standard Life Ins. Co.*, 03-61274-CUV-ZLOCH, 2004 WL 2980683 (S.D. Fla. Nov. 10, 2004)...........................................................................................................24

*Sony v. Tennenbaum*, 2011 WL 4133920 at *11 (1st Cir. 2011)..................................................13

*Sony v. Tennenbaum,* 660 F.3d 487 (1st Cir. 2011)....................................................................19

*State, Dep't of Transp. v. Skidmore*, 720 So. 2d 1125, 1131 (Fla. Dist. Ct. App. 1998) .............24

*Virgin Records Am., Inc. v. Thompson*, 512 F.3d 724, 727 (5th Cir. 2008)................................15

## I.     INTRODUCTION

For the reasons set forth below, awarding fees would not be consistent with the interests of the Copyright Act or equitable.  Accordingly, Plaintiff respectfully requests that the Court deny Defendant's motion.

## II.    ISSUES FOR ADJUDICATION

This case raises an important issue of first impression regarding the award of attorneys' fees in peer-to-peer copyright cases.  Specifically, when it appears very likely that an internet service provider ("ISP") made a correlation error, does allowing the copyright owner to depose the ISP further the interest of the Copyright Act?  If permitting the deposition *does* further the interest of the Copyright Act, then attorney fees' should not be permitted.  If permitting the deposition *does not* further the interests of the Copyright Act, then *reasonable* attorneys' fees should be permitted.   If the Court addresses the reasonability of Defendant's fees, it should, *inter alia,* decide:  (1) the value of the quantum of work that was reasonably necessary to achieve Defendant's desired result; (2) if it furthers the interest of the Copyright Act to award fees for preparing a frivolous 12(b)(6) motion to dismiss a well pled peer-to-peer copyright infringement complaint; (3) if Defendant reasonably opposed Plaintiff's motion to strike its erroneously filed draft of attorneys' notes; (4) how much to reduce Defendant's invoice for fraudulent billing; (5) if staffing four attorneys on this matter was reasonable, and how much to reduce Defendant's invoices for overstaffing; (6) how much to reduce Defendant's invoices for work performed by an unidentified attorney; (7) how much to reduce Defendant's invoices for the performance of clerical work, including clerical work contained in "block billing";  (8) if Defendant is entitled to *any* fees for work performed after it rejected Plaintiff's offer to pay $13,000; and (9) are any of Defendant's putative  "costs"  recoverable under 28 U.S.C. §1920, or are these merely unrecoverable "expenses."

## III.   FACTUAL BACKGROUND

### A. Malibu Media Filed This Suit in Good Faith and With a Proper Purpose

#### 1.    Malibu Is Being Damaged By BitTorrent Copyright Infringement

According to GQ Magazine, Malibu produces "perhaps the world's most sophisticated cinema erotica."[1]  To do so, it spends over two million dollars a year producing content, and

---

[1]   *See*   http://www.gq-magazine.co.uk/girls/articles/2013-03/13/brigham-colette-field-x-art-sex-scene

millions more each year to run its business. *Declaration of Colette Field* at ¶ 14, attached hereto as Exhibit A. *Id.* Malibu cannot compete against free copies of its works. So, on June 10, 2013, Malibu became the first Plaintiff to ever try a BitTorrent copyright infringement case.[2] *Id.* at ¶ 33. The "Bellwether" case ended with final judgments in Plaintiff's favor against all three defendants. *Id.* at ¶ 34. "The evidence . . . Malibu presented was persuasive that it had suffered real damages . . . [from] BitTorrent infringement." *Malibu Media, LLC v. John Does 1, 6, 13, 14*, 2013 WL 3038025, *8 (E.D. Pa. June 18, 2013). Each month, approximately 80,000 U.S. residents use BitTorrent to steal Malibu's movies. *Field* at ¶ 16.

    2.   <u>Malibu Makes Substantially All of Its Money Through Subscription Sales</u>

    Malibu distributes its product through a subscription based website, www.x-art.com. *Id.* at ¶ 9. It makes the *overwhelming* majority of its revenue and profit from subscription sales. *Id.* at ¶13. Its litigation efforts are aimed at deterring infringement and obtaining reasonable compensation *from infringers*. *Id.* at ¶ 22. Malibu has no desire to settle with innocent subscribers. *Id.* at ¶ 23. Courts notice: "moreover, the Court has personally observed Plaintiff's willingness to settle and/or dismiss cases without payment of *any damages* where the defendant has come forward with exculpatory evidence." *Malibu Media, LLC v. John Doe*, Civil Action No. 13-CV-00307, CM/ECF 36, at p. 5, (D. Colo. 2013), emphasis in the original. "I emphasize that Malibu is not what has been referred to in the media and legal publications, and in the internet blogosphere, as a 'copyright troll'." *Malibu Media, LLC v. John Does 1, 6, 13, 14*, 2013 WL 3038025, *1 (E.D. Pa. 2013). Further, "many internet blogs commenting on this and related cases ignore the rights of copyright owners to sue for infringement, and inappropriately belittle efforts of copyright owners to seek injunctions and damages." *Id.* at n.1.

    3.   <u>IPP, Ltd.'s Technology Has Been Independently Tested And Works</u>

    A computer investigations expert, Patrick Paige, independently tested IPP, Ltd.'s IP Address detection method and concluded that it works. *See* Declaration of Patrick Paige ("Paige Decl."), Ex. C. A summary of how IPP, Ltd.'s people, software and hardware work is set forth in the declarations of Tobias Feiser and Michael Patzer, attached as Ex. D and E. Countless

---

[2] *See* Exhibit B for instructions to download the audio recording of the trial. The testimony contained in the audio recording is hereby made a part of the record.

defendants have admitted liability.  From the above, Malibu knows IPP, Ltd. correctly identifies infringers' IP Addresses.

      4.    <u>The Subject IP Address Was Used By A Serial Infringer</u>

      At the time Plaintiff filed this case IPP, Ltd. detected the infringer stealing 14 movies a total of 337 times.  *See* Declaration of M. Keith Lipscomb ("Lipscomb Decl."), Ex F, at ¶ 2.  By January 2013, when the infringement stopped, the infringer had stolen 25 movies and been detected a total of 549 times.[3]  *Id.*, at ¶ 3.  From Plaintiff's perspective, this suit was aimed at one of its worst infringers.

      5.    <u>ISPs' Correlations Are Almost Always Accurate</u>

      This is the first and only case where Malibu's counsel believes an ISP made a correlation error.  *Id.*, at ¶ 5.  Undersigned has personally been assured by *numerous* ISPs that their lookups are accurate and reliable.  *Id.*, at ¶ 6.  Comcast which, like Hotwire, is a major ISP, testified through its 30(b)(6) representative that it was "absolutely certain" that its correlation was correct. In another matter, Hotwire testified that it takes its responsibility to correlate an IP Address to a subscriber seriously and that it uses the same procedure to perform a correlation for Malibu that it uses in a criminal case.  *See* Ex. G.  In the approximately 200 instances where former Palm Beach Detective Patrick Paige supervised or directly performed the investigation of a criminal matter involving a computer and the Internet, he never encountered an ISP correlation error. Paige Decl., at ¶ 20.  And, after executing the search warrants based upon the ISPs' correlations, in all but one instance, the police officers found the evidence.[4]  *Id.*, at ¶ 21.  In short, prior to filing suit there was no reason to suspect a correlation error because they are exceedingly rare anomalies.

      6.    <u>Hotwire Communications Said It Assigned the Subject IP Address to Defendant</u>

      In response to a subpoena, Hotwire identified Mr. Pelizzo as the subscriber of the internet being used to infringe.  *See* Ex. H.  The subpoena was authorized after a hearing in a Pure Bill of Discovery proceeding.  *See* Ex. I.  Hotwire complied with the Cable Communications Act by

---

[3] The infringer likely moved.  Indeed, in 2013, after the infringement stopped, Plaintiff could not find another Miami Hotwire subscriber committing as much infringement.  *Id.*, at ¶ 4.

[4] In that one instance, a next door neighbor was using the subscriber's open WiFi.

notifying Defendant of the subpoena.[5]  *See* Deposition of Laurie M. Murphy ("Murphy Depo"), Ex. J, at 79:15-19.  Upon receipt, Defendant did not – but could have – called Hotwire to advise that his condo was unoccupied. Had he done so, Hotwire may have investigated or refrained from disclosing his identity.

       7.    Prior to Filing Suit, Plaintiff Attempted to Contact Defendant Numerous Times

Prior to filing this suit, during the pendency of the Bill of Discovery suit, Plaintiff attempted to contact Defendant on April 6, 2012, April 10, 2012, April 17, 2012, May 21, 2012, June 4, 2012, and August 14, 2012 via telephone.  Lipscomb Decl., at ¶ 7.  Defendant did not respond and the subject IP Address continued to infringe at an alarming rate.  Had Defendant responded, Plaintiff would have deposed Hotwire and Defendant's building in the Bill of Discovery suit.  Significantly, Defendant hired Malloy & Malloy, PA prior to being served.  *See* Ex. K and CM/ECF 6.  This raises the presumption Defendant was unreasonably ignoring the dispute.

       8.    Plaintiff Had a Proper Purpose to File Suit

Malibu sued to: (a) enjoin the *infringer*; (b) seek compensation from the *infringer*; and (c) deter future infringement by others.  These are reasonable and justifiable bases to sue.

**B.  Plaintiff Acted Reasonably And Defendant Acted Unreasonably**

       1.    Without First Talking to Plaintiff, Defendant Drafted a Frivolous 12(b)(6) Motion

Instead of calling undersigned to say: "You've got the wrong guy.  My client was out of the country and his condo was empty" – which is what a reasonable and cost-conscious lawyer's first move would be – on September 21, 2012, Defendant filed a frivolous 12(b)(6) Motion.  It was unnecessary because a simple verified answer and defenses would have communicated that Defendant was out of the country and his condo was empty.[6]  It was frivolous because scores of identical Rule 12(b)(6) motions have been *universally* rejected.

---

[5] Hotwire's Subpoena Response noted: "Leo Pelizzo is an Account Holder.  Hotwire does not maintain [records of] individual users of Internet."  *Id*.  All this means is that Hotwire does not know who used its subscriber's Internet service.  No ISP can know that.

[6] Defendant also could have asked Plaintiff to stipulate to a motion to amend the Complaint and allow him to proceed anonymously.  Plaintiff would have agreed.  Lipscomb Decl., at ¶ 8.  Indeed, Plaintiff has allowed other defendants to proceed anonymously even after naming them.  *Id*.

    2.    <u>Right Away, Plaintiff Advised Defendant It Would Not Push For A Settlement</u>

Based on Defendant's declaration, it appeared likely that Hotwire had made a correlation error.  So, on October 11, 2012, undersigned sent defense counsel an e-mail advising him that "we do not want to push this case against a person who was not the downloader nor do we expect a non-infringer to settle. . . .  Figuring this out [what happened] as inexpensively and expeditiously as is possible is in both of our clients' best interests.  I would like to teleconference with you toward this end." *See* Exhibit L.

    3.    <u>Malibu Advised Defendant NOT to Spend Money On this Matter; And, That After Hotwire's Deposition Defendant Would Likely Be Dismissed</u>

During counsels' *first* teleconference, on October 23, 2012, undersigned urged opposing counsel <u>NOT</u> to spend money, and advised that Malibu did not intend to proceed after the Hotwire deposition:

> During our conversation, I urged you to advise your client not to spend money on this process.  Presently, we do not intend to pursue this matter past the deposition of Hotwire unless we get confirmation from Hotwire that your client is the correct subscriber.  And, thereafter we will only pursue it if we can explain why infringements occurred when he was out of town.

*See* Exhibit M.

    4.    <u>Malibu Had a Proper Purpose For Deposing Hotwire</u>

Malibu deposed Hotwire for two reasons: (a) to ascertain if and how the correlation error occurred; and (b) to determine if it would be possible to identify the infringer.  Lipscomb Decl., at ¶ 9.

    5.    <u>To Reduce Defendants' Fees Plaintiff Did Defendants' Work</u>

To reduce Defendant's fees, Plaintiff drafted the Rule 26(f) Report.  And, both motions to enlarge the time within which *Defendant* had to respond to the Complaint.  *Id.*, at ¶ 10.

    6.    <u>Plaintiff Scheduled Hotwire's Deposition To Coincide with Other Depositions</u>

Hotwire's deposition was rescheduled for March 13, 2013 to coincide with four other depositions undersigned took in another matter near Philadelphia.  *Id.*, at ¶ 11.

7.    Plaintiff Learned How and Why Hotwire Made a Correlation Error

Hotwire's 30(b)(6) deponent testified that the *only* way she was aware that a correlation error could occur was if a port on the group modem on Defendant's floor was mislabeled. Murphy Depo., pp. 39-50.[7]

8.    Plaintiff Offered To Voluntarily Dismiss Defendant Immediately After the Hotwire Deposition

Immediately after the Hotwire deposition, undersigned offered to voluntarily dismiss his client with prejudice. Lipscomb Decl., at ¶ 12. The offer was contingent on mutual releases. *Id.*

9.    Defendant Unreasonably Demanded $17,500 In Attorneys' Fees

On March 21, 2013, in response to the walk-away offer, Defendant demanded $17,500 for attorneys' fees. *See* Ex. N. *Shocked* by the clearly excessive fees and admittedly peeved, within a half hour, undersigned replied with two knee-jerk e-mails: (a) rejecting the demand and (b) indicating Plaintiff would pursue the case. *Id.* Simultaneously, paralegals were instructed to propound discovery. *Id.* Undersigned cooled quickly. And, at the mediation less than two weeks later, undersigned again advised Defendant that Malibu would be dismissing the case. Lipscomb Decl., at ¶ 14.

10.    The Mediation Focused On How Much Plaintiff Would Pay in Fees

On April 4, 2013, the parties attended mediation. Lipscomb Decl., at ¶ 13. The focus of all the negotiations was on how much Plaintiff would pay in fees. *Id., at* ¶ 16. Significantly, undersigned did not and does not believe Defendant is entitled to *any* fees, but Malibu made offers genuinely attempting to compromise. *Id., at* ¶ 17. Significantly, Malibu *never* demanded money from Defendant. *Id.*, at ¶ 18.

11.    Malibu Offered $13,000 for Fees

Shortly after the mediation, on April 11, 2013, Malibu offered $13,000 for fees. *See* Ex. O. The offer was orally conditioned on Defendant allowing Plaintiff to take the 30(b)(6) of the building so that Plaintiff could identify the infringer. Defendant responded that he would not

---

[7] To explain, the individual units in Defendant's building do not have modems provided by Hotwire. Instead, the modem for a floor is in a utility closet for that floor. And, wires from that modem's ports are run to the resident's individual units. A "mislabeled port" would cause Hotwire to identify Defendant instead of the infringing neighbor on his floor. *See* p. 39, lines 3-12. *See also* p. 49, line 7 through p. 50, line 7.

take anything less than full reimbursement of fees and costs. *See* Ex. P.   At that time, Defendant had advised Plaintiff that his fees and costs equaled $24,000. *See* Ex. Q.

       12.   <u>Defendant Would Not Stipulate to Being Voluntary Dismissed With Prejudice</u>

Resolved to fighting clearly excessive fees, Malibu requested that Defendant stipulate to being dismissed with prejudice.   *See* Ex. R.   Defendant refused and drafted a significant opposition to Plaintiff's motion to voluntarily dismiss him with prejudice.   Significantly, Plaintiff had indicated Defendant would be the prevailing party and would have so stipulated.   CM/ECF No. 37.

## IV.   <u>LEGAL STANDARD</u>

In a copyright case, "courts should not simply award attorney's fees to the prevailing party as a matter of course." *Luken v. International Yacht Council, Ltd.*, 581 F.Supp.2d 1226, 1239 (S.D. Fla. 2008).[8]   Instead, "courts must be careful to award fees *only* where such an award is 'faithful to the purposes of the Copyright Act.'" *Id.*, citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 n.19 (1994) (emphasis added).   *Accord MiTek Holdings, Inc. v. Arce Eng'g Co., Inc.*, 198 F.3d 840, 842-43 (11th Cir. 1999) (reversing court for not considering the interests of the Copyright Act.)   "To guide district courts in the exercise of their discretion, the Supreme Court has enumerated four non-exclusive factors under a §505 analysis: (1) frivolousness; (2) motivation (3) objective unreasonableness (both in factual and legal components of the case); and (4) the need in particular circumstances to advance considerations of compensation and deterrence." *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 2010 WL 1302914, *3 (S.D. Fla. 2010) (Seitz, J.), *citing Fogerty,* 510 U.S. at 534 n.19, 114 S.Ct. at 1033 n.19; *MiTek,* 198 F.3d at 842 (same).   "The imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act." *Luken*, 581 F.Supp.2d at 1240.   In *Donald Fredrick Evans and Associates v. Continental Homes, Inc.*, 785 F.2d 897 (11th Cir. 1986), the Court affirmed the denial of attorneys' fees to a prevailing defendant and advised district courts that a losing plaintiff's good faith "*likely* would justify a denial of fees" to a prevailing defendant.   *Id.* at 916 (emphasis added).   Significantly, in

---

[8] *Cf. Arista Records, Inc. v. Beker Enterprises, Inc.*, 298 F.Supp.2d 1310, 1316 (S.D. Fla. 2003) (opining that in the context of a default judgment awarding fees to the prevailing plaintiff is "the rule rather than the exception," which makes sense because presumably the suit furthered the Copyright Act's interest of deterring infringement.   The *Arista* dicta does not make sense when, as here, a Plaintiff lost because of a rare third party mistake.)

*Oravec*, Your Honor cited *Donald Fredrick Evans* and applied its rationale to *only* award attorneys' fees to the prevailing defendant for work done after "the *latest* date on which [it was] objectively [] reasonable" to proceed.  *Oravec*, 2010 WL 1302914, *9 (emphasis added).

**V.     ARGUMENT**

    **A.  Attorney Fees Should Not Be Awarded**

        "The touchstone of attorney's fees under § 505 is whether imposition of attorney's fees will further the interests of the Copyright Act, i.e., by encouraging the raising of objectively reasonable claims and defenses, which may serve not only to deter infringement but also to ensure that 'the boundaries of copyright law [are] demarcated as clearly as possible' in order to maximize the public exposure to valuable works."  *Mitek* at 842.

       1.   Deposing Hotwire Advanced Copyright's Interests In Accurate ISP Correlations

        "Senator Patrick Leahy, co-sponsor of the DMCA (Digital Millennium Copyright Act) stated that Title II of the DMCA 'is intended to preserve incentives for online service providers and copyright owners to cooperate to detect and address copyright infringements that occur in the digital networked environment.'"  *AF Holdings, LLC v. Does 1-1,058*, 286 F.R.D 39, 48 (D.D.C. 2012), *citing* H.R.Rep. No. 105-796, Comm. on Conf., 72 (1998), 1998 U.S.C.C.A.N. 639, 649.  To detect and address digital infringements internet service providers, like Hotwire, must be able to accurately correlate an IP Address to a subscriber.  Penalizing a Plaintiff for deposing an ISP who likely made a correlation error would deny the ISP the ability to take the necessary corrective measures brought to light by a deposition.  Since the DOJ and civil plaintiffs rely on IP address correlation in copyright cases, an ISP's ability to correctly correlate is *clearly* in the interest of the Copyright Act.

       2.   Deposing Hotwire Advanced Copyright's Interests In Deterring Infringement

        One of Malibu's purposes for taking Hotwire's deposition was to ascertain whether it could identify the serial infringer.  Through the "Digital Theft Deterrence and Copyright Damages Improvement Act of 1999" Congress . . . amended the Copyright Act . . . to increase the minimum and maximum awards available under § 504(c)."  *Sony v. Tennenbaum*, 2011 WL 4133920 at *11 (1st Cir. 2011).   Congress found on-line piracy results in "lost U.S. jobs, lost wages, lower tax revenue, and higher prices for honest purchasers."  *See* Legislative History, p.3, Ex. S. "The general purpose of the amendments is to strengthen the deterrent effect of statutory damages."  *Id.* at p. 6.     And, "[n]otwithstanding the [current] statutory penalities . . .

enforcement has been minimal." *Id.* at p. 3.  <u>First</u>, appreciating how an ISP may err assists plaintiffs and defendants' to analyze peer-to-peer copyright cases.  Indeed, it may color a party's desire to proceed, enable plaintiffs and defendants to focus on discovery, or both.  This furthers the Copyright Act's interests in identifying and deterring *infringers*.  <u>Second,</u> Fed. R. Civ. P. 26(b)(1), permits discovery if "if it appears reasonably calculated to lead to the discovery of admissible evidence."  Here, Hotwire's deposition was reasonably calculated to identify the infringer.  Accordingly, awarding fees would undermine the Copyright Act's purpose of deterring infringement because, as the Register of Copyrights correctly opined, "for many people, the best form of education about copyright in the internet world is the threat of litigation."[9]  Here, a fee award will dissuade copyright owners from investigating possible ISP errors who are doing so for the purpose of identifying the infringer.  Copyright law is interested in identifying serial infringers, not in letting them remain unidentified.

> 3.   <u>The Four *Fogerty* Factors Weigh Against Awarding Attorney's Fees</u>
>> a.   <u>Plaintiff's Claims Were Not Frivolous</u>

This Court held that the Complaint states a claim for copyright infringement.  *Malibu Media, LLC v. Pelizzo*, 2012 WL 6680387 (S.D. Fla. 2012).  Had Hotwire identified the correct subscriber, Plaintiff would likely have prevailed.  Indeed, in the Bellwether case, the court found all three defendants liable.  *See Malibu Media, LLC v. John Does 1, 6, 13, 14*, 2013 WL 3038025 (E.D. Pa. 2013).  Malibu's likely success is bolstered by former Detective Patrick Paige's experience conducting approximately 200 searches.  *See supra* at p. 3.

>> b.   <u>Plaintiff's Motivation Was Proper</u>

"It goes without saying that protection of one's copyright constitutes a permissible motivation in filing a copyright infringement case . . . .  Of course, the Copyright Act was designed to enable such conduct."  *Luken v. Int'l Yacht Council, Ltd.*, 581 F. Supp. 2d 1226, 1245 (S.D. Fla. 2008).  As explained above, Plaintiff's motivation for deposing Hotwire was also proper.  And, Plaintiff advised Defendant he would likely be dismissed following the deposition.[10]

---

[9] *Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary*, 108th Cong. (2003), *available at* http://www.copyright.gov/docs/regstat090903.html.

[10] Defendant's attempt to impute an improper motivation through *ad hominem* attacks is revisionist history that should fall on deaf ears in light of undersigned's first e-mail advising

c.  <u>Plaintiff's Actions Were Reasonable</u>

Filing suit was clearly reasonable.  For the above reasons, taking Hotwire's deposition was reasonable.  Thereafter, Malibu reasonably offered to dismiss Defendant.  Next, Malibu reasonably refused to pay clearly excessive attorneys' fees.  Malibu negotiated in good faith at mediation.  After mediation, Plaintiff made a more than reasonable settlement offer of $13,000. With no compromise possible, Malibu requested Defendant to stipulate to a dismissal with prejudice.   When the request was denied Plaintiff moved to dismiss Defendant with prejudice. This motion follows.

(i)      The Fifth Circuit Court Held Pressing Forward With Discovery for the Purpose of Identifying The Infringer Even When the Copyright Owner Knows The <u>Defendant Is Not the Infringer Is Reasonable and Does Not Warrant Fees</u>

The Fifth Circuit's opinion in *Virgin Records Am., Inc. v. Thompson*, 512 F.3d 724, 727 (5th Cir. 2008) is directly on point.  In *Virgin*, the copyright owner subpoenaed an ISP to identify the subscriber.  Thereafter, the copyright owner, just like here, attempted to contact the defendant for six months.  Just like here, Defendant declared he was innocent.  In *Virgin*, the Defendant asserted the infringer may have been his adult daughter but he did not provide her name.  *Id.* Here, Defendant also asserted it must have been someone else.  Virgin pressed on with discovery and immediately moved to dismiss Defendant after identifying the infringer as defendant's adult daughter.  *Id.*  The underlying rationale in *Virgin* is equally applicable here. Namely, even when a copyright owner has a strong reason to suspect the Defendant is not the infringer, fees are not

---

Defendant that Plaintiff would not seek a settlement, and undersigned's second e-mail urging Defendant not to spend any money and that he would likely be dismissed.  Further, Plaintiff did not intend to embarrass Defendant.  Defendant could have asked for a protective order removing his name from pleadings.  Malibu would have consented.  At least ten courts have documented Malibu's policy of consent.  *See e.g., Malibu Media, LLC v. John Does 1-48*, 2012 WL 6867308 (M.D. Fla. 2012).

Defendant cites *In re BitTorrent Adult Film Copyright Infringement Cases,* 2012 WL 1570765 (E.D.N.Y. 2012) and *Malibu Media, LLC v. John Does 1-10,* 2012 WL 5382304, at 4 (C.D. Cal. 2012) for the proposition that courts have criticized Plaintiff.  Significantly, the Orders in both cases were issued s*ua sponte* at the inception of the case, prior to giving Malibu the opportunity to address any concerns about its litigation processes or purpose.   No court has ever criticized Malibu's purpose after hearing from it.  And, numerous courts have held that Malibu does not engage in "harassing" or "bad faith" behavior.  *See e.g., Malibu Media, LLC v. John Does 1-6,* 2013 WL 2150679 (N.D. Ill. 2013)*; Malibu Media, LLC v. John Does 1-5,* 2012 WL 3641291 (S.D.N.Y. 2012).

warranted when a copyright owner reasonably presses forward for the purpose of identifying the infringer.  That is all Virgin and Malibu did.  And, in both cases fees are not warranted.

### d.   Compensating Defendant Will Not Further the Purposes of the Copyright Act

Undersigned has not found one case where considerations of compensation *alone* were sufficient to justify an award of attorneys' fees to a defendant.  *See Alexander v. Chesapeake*, 60 F.Supp.2d 544 (E.D. Va. 1999) ("Consideration of compensation and deterrence does not suggest that attorneys' fees are appropriate. . . . [Indeed], the Defense of reasonable legal claims, under the so-called 'American Rule,' is in most instances a cost of business.")  Moreover, here, very little work was necessary to defend this action.  Had Defense counsel done nothing but call, file a verified answer and 26(a) disclosure he would have obtained the same result.  Accordingly, Defendant's fees are almost entirely a self-inflicted wound.[11]

### e.   Deterring Plaintiff Is Unnecessary

For the reasons stated above, plaintiffs should not be deterred from investigating ISP correlation errors.  Deterring Malibu from pursuing innocent defendants is not necessary.  *See* undersigned's first two e-mails and *Malibu Media, LLC v. John Doe*, Civil Action No. 13-CV-00307, CM/ECF 36, at p. 5 (D. Colo. 2013) ("moreover, the Court has personally observed Plaintiff's willingness to settle and/or dismiss cases without payment of *any damages* where the defendant has come forward with exculpatory evidence.")

### f.   Other Considerations Make An Award of Fees Inequitable

Plaintiff has also suffered from Hotwire's mistake.  First, Hotwire's mistake enabled a serial infringer to continue his tortious conduct.  Second, Plaintiff has also incurred fees and costs.  Significantly, however, almost all of the fees Plaintiff incurred were caused by

---

[11] This Court could create a rule wherein it awards a peer-to-peer copyright defendant reasonable fees from the latest point in time that it was reasonable to believe that the defendant committed the infringement if Defendant: (1) has not unreasonably refused to identify the infringer, and (2) could not have ascertained the infringer's identity through a reasonable investigation.  To incentivize cooperation, any such award should be reduced by an amount equal to the value of the work a defendant unreasonably causes a plaintiff. This would promote the interests of the Copyright Act by incentivizing cooperation during the process of identifying an infringer.  From experience, undersigned knows that incentivizing cooperation would be beneficial for all concerned.  If the Court adopts this rule, it should make clear that it is not retreating from *Oravek, infra*, because this rule does not apply to situations where it is reasonable to believe the defendant committed the infringement; and that it is consistent with *Virgin, infra*, because in that case, the Defendant unreasonably refused to provide the identity of his daughter.

Defendant's unnecessary work and unreasonable positions.  Under these circumstances, Plaintiff respectfully submits that the scales of equity do not tip in Defendant's favor.

**B.  Even If The Court Finds Defendant is Entitled To Some Fees, The Court Should Dramatically Reduce The Amount Requested**

1.  Law Governing Proper Fee Petitions

"The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).  To do so, "fee counsel . . . [must] supply[] the court with specific and detailed evidence from which the court can determine the reasonable hourly rate." *Id.* "[T]ime expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Id.*  And, unlike Defendant's motion, "[a] well prepared fee petition also would include a summary, grouping time entries by the nature of the activity or stage of the case." *Id.*  Generally, thereafter, "the court calculates the 'lodestar,' which is the number of hours (tempered by billing judgment) spent in the legal work on the case, multiplied by a reasonable market rate in the local area." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1353 (11th Cir. 2000) (internal citations omitted).  According to the "Supreme Court . . . 'billing judgment' . . . means [fee applicants] must exclude from their fee applications 'excessive, redundant, or otherwise unnecessary [hours].'" *Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (internal citations omitted).

"The retrospective futility of work . . . cast[s] doubt on the reasonableness of requiring the other side to pay for it." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1356 (11th Cir. 2000).  "Courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Am. Civil Liberties Union of Georgia v. Barnes,* 168 F.3d 423, 428 (11th Cir. 1999).  Unfortunately, like here, "courts are often faced with inadequate fee applications or with claims for hours or fee rates which seem excessive." *Norman at* 1303. In such instances courts are not required to use the loadstar method; instead, "where [as here] the time or fees claimed seem expanded or there is a lack of documentation or testimonial support the court may make the award on its own experience." *Id.*

2.  Explanation For A Reasonable Fee for The Necessary Work In this Matter

Where, as here, Defendant's invoices are clearly excessive, the easiest method to calculate a reasonable fee is to determine what was necessary to accomplish Defendant's goal of

being dismissed with prejudice, estimate the amount of time it would take to do that work, and calculate the value.  Plaintiff respectfully submits the following time entries would be reasonable and necessary: (a) Teleconference with client to discuss matter, (1.3); (b) Review client's documents confirming the statement that he was out of the country and no one was living in his condo, (.7); (c) Review complaint, (1.1); (d) Teleconference with opposing counsel, (.4); Review and forward e-mail to client from Malibu advising that Malibu merely wants to take Hotwire's deposition and then plans on dismissing him, review client's response, (.2); (e) Draft 26(a) disclosures, (.2); (f) Review and approve 26(f) report drafted by opposing counsel, (.3); (g) Review motion to enlarge time within which to answer drafted by opposing counsel, (.2); (h) Review CM/ECF e-mail granting motion to enlarge, (.1); (i) Review motion to enlarge time within which to answer drafted by opposing counsel, (.2); (j) Review CM/ECF e-mail denying motion to enlarge, (.1); (k) E-mail correspondence between counsel re: necessity to answer, (.2); (l) Draft verified answer and affirmative defenses, (2.3); (m) Prepare for and attend Hotwire deposition, talk with adverse counsel and client re: dismissal, (4.6); (n) Review stipulation of dismissal, (.2); (o) approximately 20 miscellaneous short e-mails between undersigned and adverse counsel or client, (2.1).  Total Hours:  14.2. –x– Hourly  Rate: $215 = Total invoice of $3,053.

       3.   Summary of Defendant's Unreasonable Fees

      Malibu analyzed every entry on Defendant's invoices.  Through Ex. T, Plaintiff accepts or objects to each entry.  In total, Plaintiff objects to 155 entries equaling $28,803.23. Specifically, Defense counsel had 89 entries involving either drafting e-mails or receiving and reviewing e-mails which amounted to 20.2 hours and $4,386.00.  *See* Ex. U.  Additionally, Defense counsel had 26 entries for "internal conferencing" amounting to 5.8 hours and $1,719.50.  *See* Ex. U.  Defense counsel improperly combined 19 entries through block billing which totaled $8,263.25.  *See* Ex. U.  Many of those entries improperly contained clerical work. Indeed, Defense counsel had 23 entries totaling 17.3 hours and $3,719.50 containing tasks that should not be billed by an attorney.  *See* Ex. U.  In terms of unnecessary motion work, Defense counsel billed 35.9 hours and $7,780 for their pleading motions.  *See* Ex. U.  This includes their motion to dismiss, unreasonably opposing Plaintiff's motion to strike, and unreasonably opposing Plaintiff's motion to dismiss the case.  Defense counsel spent 36.2 hours and $7,669.00 preparing their unnecessary attorneys' fee motion and $3,871.25 on attorneys' fees for

mediation. *See* Ex. U. This is in stark contrast to Defense counsel's time spent on their initial case review (3.9 hours amounting to $979.50); legal research (3.8 hours amounting to $808.00); answer (4.1 hours amounting to $881.50) and discovery (15.7 hours amounting to $3,386.50, including 26(a) disclosures and the 26(f) report). *See* Ex. U. While Defense counsels' time spent on reasonable work was dramatically less than the time spent on frivolous or unnecessary work, Plaintiff still objects to the majority of these time entries because of continuous overbilling and inflating (such as on Dec. 21, 2012 billing .40 and $86.00 for reading a short extension motion prepared by Plaintiff and informing Plaintiff of a one word typo).

        4.    <u>The Overwhelming Majority of Defendant's Fees Were Unnecessary, Excessive, Duplicative or Fraudulent</u>

           a.   Defendant's 12(b)(6) Was Unnecessary, Frivolous And Inconsistent With the <u>Purposes of the Copyright Act</u>

Defendant's 12(b)(6) was unnecessary because a verified answer would have communicated that Defendant was out of the country and that his condo was empty during the relevant period. It was also unreasonable to draft it without first speaking with Plaintiff to ascertain Plaintiff's intention in light of the facts. *See Powell v. Carey Int'l, Inc.*, 547 F.Supp.2d 1281, 1294 (S.D. Fla. 2008) *aff'd*, 323 F. App'x 829 (11th Cir. 2009) (eliminating hours spent on motions that could have been avoided through "professional communication with each other"); *Mannings v. Sch. Bd. of Hillsborough Cnty., Fla.*, 826 F. Supp. 1404, 1411 (M.D. Fla. 1993) ("The district court has the discretion to exclude excessive or unnecessary work."); *Rodriguez v. Super Shine & Detailing, Inc.*, 2012 WL 2119865, *6 (S.D. Fla. 2012) ("[A]n award of attorney's fees can be reduced for raising unsupported claims that prolong litigation and prevent settlement negotiations.")

The 12(b)(6) Motion was frivolous because it was based on a denial and the Complaint pled the elements of infringement. Further, the Supreme Court, Five Circuit Courts, and at least twenty district courts have all held peer-to-peer infringement is actionable. See *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.* 545 U.S. 913, 125 S.Ct. 2764 (2005); *Sony v. Tennenbaum,* 660 F.3d 487 (1st Cir. 2011); *Arista Records, LLC. v. Doe 3*, 604 F.3d 110 (2d Cir. 2010); *In re Aimster Copyright Litigation*, 334 F.3d 643 (7th Cir. 2003); *In re Charter Communications, Inc. Subpoena Enforcement Matter*, 393 F.3d 771, 774 (8th Cir. 2005); *A&M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1013 (9th Cir. 2001); *RIAA v. Verizon Internet Services, Inc.,* 351 F.3d 1229,

1238 (D.C. Cir. 2003); and Ex. V for a partial list of district court cases denying 12(b)(6) motions in peer-to-peer cases where IP Addresses were used to identify the defendant.

In short, the "'the boundaries of copyright law [with respect to this issue have already been] demarcated as clearly as possible.'" *Mitek*, 198 F.3d at 842. Accordingly, awarding fees for the 12(b)(6) Motion would only encourage other peer-to-peer defendants, and there are many across the country, to file the frivolous 12(b)(6) motions causing parties and courts to needlessly expend labor and resources litigating (and again adjudicating) a well settled issue.

Defendant spent approximately 22 hours of work on the 12(b)(6) Motion, which equates to $4,730, which for the foregoing reasons, should not be awarded.

### b. Defendant's Opposition To Plaintiff's Motion to Strike Was Unreasonable

Defendant's Memorandum in Opposition to Plaintiff's Motion To Withdraw and Strike Plaintiff's Memorandum in Opposition to Motion to Dismiss was unreasonable.[12] Defendant spent $752.50 on this opposition. It should not recover for preparing an opposition aimed at preventing Malibu from striking erroneously filed attorneys' notes. *See* FL ST BAR Rule 4-4.4(b), *Powell, Rodriquez and Mannings, supra*.

### c. Defendant's Opposition to Plaintiff's Motion to Dismiss Him Was Unreasonable

Defendant's goal should have been to be dismissed with prejudice. Plaintiff would have stipulated he was the prevailing party. Refusing to stipulate and drafting an opposition to Plaintiff's motion was unreasonable. Defendant spent $2,236 on this opposition. He should not recover. *See Powell, Rodriquez and Mannings, supra* at p. 14.

### d. The 1st Year Associate's Services Were Unnecessary And His Rate Excessive

Defense attorney Tony Guo, who was hired in March 2013 as a first-year associate, contributed nothing useful to this case and Plaintiff should not be charged for his training. *See Powell v. Carey Int'l, Inc.*, 547 F. Supp. 2d 1281, 1293 (S.D. Fla. 2008) *aff'd*, 323 F. App'x 829 (11th Cir. 2009) (The Court cannot award a fee for their time, however, because their participation did not further the prosecution of this action or effectively aid in resolving this dispute." At a minimum, Defendant should not be awarded a rate of $195.00 for Mr. Guo. *See*

---

[12] Undersigned drafted the opposition and sent it to attorney Emilie Kennedy for proof reading and filing. Lipscomb Dec., at ¶ 19. Ms. Kennedy could not do it and erroneously sent a draft of the notes she had given undersigned to prepare the opposition to attorney Jason Cooper for filing, instead of the completed opposition. *See* Declaration of Emilie Kennedy, Ex. W. Mr. Cooper put the caption on and sent it to a paralegal for filing. *Id.*

*Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1377 (M.D. Fla. 2010)  (reducing fees for a "freshly minted lawyer.")

As for not contributing, Mr. Guo billed five hours for research and writing an interoffice memorandum for "identification based on an IP address" on March 26, 2013 and March 28, 2013.  First, the description is not specific enough to identify what he actually researched. Second, for purposes of a copyright infringement suit, Plaintiff has never contested that it had to identify the actual infringer.   Other unnecessary work includes conducting "research case background" and researching potential claims against Hotwire which do not advance Defendant's defense of *Plaintiff's* claim.    In total he billed $3,013, and Defendant should not recover for his time.

> e.   Defense Counsel Spent An Unreasonable Amount of Time Preparing for Mediation

Excluding the mediator's fees, Defense counsel spent $3,871.25 on the mediation.  This includes eight hours for drafting a mediation statement that should not have been more than a one or two page letter, which should have taken no longer than hour, and travel time to the mediation.  The mediation lasted approximately five hours. Lipscomb Decl., at ¶ 15.  Even if he spent three hours to prepare, the fees would only have been $1,720.  Anything more than that is unreasonable and should be denied.

> f.   Staffing Four Attorneys (Including One Unidentified Attorney) on this Matter Was Unreasonable

Staffing four lawyers on a case where the parties' first communication was "do not spend money, your client will likely be dismissed" is unreasonable.  One of those four attorneys is not even identified in Defendant's motion for fees.  Therefore, at a minimum, their rate should be reduced to that of an entry level attorney.[13]   *See Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1375 (M.D. Fla. 2010) (reducing rate of unidentified paralegal to entry level paralegals).  Respectfully, a competent sixth year attorney should not have needed assistance on this case.  As examples, this includes conferencing on Oct. 8, 2012 over whether to grant an extension and on Nov. 16, 2012 conferencing over a simple joint scheduling report.  Therefore,

---

[13] See Invoice 9, entry on April 4, 2013, for $431.25.  Entry level attorneys charge $125.  The entry should be reduced to $156.25.

Malibu respectfully requests that the Court write off all but Fernando Ferriero's time. *See Powell v. Carey Int'l, Inc.*, 547 F. Supp. 2d 1281, 1293 (S.D. Fla. 2008) *aff'd*, 323 F. App'x 829 (11th Cir. 2009) (writing off unnecessary lawyer's time.)  Lawyers other than Mr. Ferriero billed $4,501.75.

> g.   The Invoices Demonstrably Establish Fraudulent Overbilling

Defense counsel fraudulently overbills by 100% for each small task.  Indeed, despite 178 different billing entries, the bulk of which consist of reviewing and drafting e-mails, Defendant never billed 1/10th for anything.  *See e.g.* Dec. 11, 2012 "Draft e-mail to opposing counsel inquiring into whether any additional information received from Hotwire", .20 hours, $43.00. The e-mail states: "Keith: Please advise if you have received any additional information from Hotwire regarding the above-referenced matter."  This e-mail could not have taken more than thirty seconds to draft.  Billing .2 is fraudulent.  There are *innumerable* other examples.  *See e.g.*, Dec. 21, 2012 "Receipt and review of e-mail from opposing counsel consenting to extension of deadline to Answer", .20 hours, $43.00.[14]   The e-mail was one paragraph.  Considering each 1/10 equates to $24.00, overbilling by 1/10th for each small task adds up to a lot of money. Moreover, since Defense counsel automatically overbills by 100% for each small task, it casts serious doubt about the veracity of larger entries all of which appear to be grossly inflated.

Here, Defendant spent $4,386 on routine e-mails the time for which were all grossly inflated.  He should not recover the great bulk of this money.  *See Powell v. Carey Int'l, Inc.*, 547 F. Supp. 2d 1281, 1295-96 (S.D. Fla. 2008) *aff'd*, 323 F. App'x 829 (11th Cir. 2009) (reducing fees when "Plaintiffs' counsel's time sheet [was] replete with entries of .1 hour or .2 hours for tasks that could not possibly take that amount of time. . . . [e.g.,]  twelve minute billing periods for such things as reviewing an Order.")

> 5.   Defense Counsel Charge For Clerical Work At Attorney Rates and Seek To Recover For "Block Entries" Commingling Attorney and Clerical Work

Defense counsel routinely bills for clerical work.  These billings should be deducted.  *See Machado v. Da Vittorio, LLC*, 2010 WL 2949618 (S.D. Fla. July 26, 2010) ("where the work performed was purely clerical … those hours have been excluded from any fee award"); *Manriquez v. Manuel Diaz Farms, Inc.*, 2002 WL 1050331 (S.D. Fla. May 23, 2002) (same).

---

[14] *See* E-mail as Exhibit X which consisted of a paragraph.

Examples include: Aug. 23, 2012: "attend to scheduling a client meeting"; Sept. 21, 2012 "attend to filling"; on Oct. 16, 2012 "attend to filing"; on Oct. 22, 2012 "Draft followup E-mail confirming time to discuss case status"; on Oct. 26, 2012 "Attend to filing"; Dec. 12, 2012 "Receipt and review e-mail from client Re deposition dates; Draft follow up E-mail to client re same"; on Jan. 7, 2013 "Draft e-mail to client re Motion to Dismiss status and scheduling of deposition"; on Feb. 20, 2013 "Attend to filing Answer"; etc.  These objections are fully set forth on Exhibit T and total $3,719.50.

     6.   <u>Defendant Should Not Be Awarded Any Fees Following Malibu's $13,000 Offer</u>

Despite believing Defendant was not entitled to *any* fees, on April 11, 2013 Plaintiff offered Defendant $13,000 to settle the fee dispute.  After deducting unreasonable and fraudulent billing, it is highly unlikely Defendant's bill would have reached $13,000 at that time.  If the Court determines, as Plaintiff respectfully suggests that it should, that Defendant was not entitled to more than $13,000 on April 11, 2013 then it should not award Defendant any fees for time spent after that.  To explain, "'[s]ubstantial settlement offers should be considered by the district court as a factor in determining an award of reasonable attorney's fees, even where Rule 68 does not apply.'"  *Moriarty v. Svec*, 233 F.3d 955, 967 (7th Cir. 2000) (citation omitted.)  "Attorney's fees accumulated after a party rejects a substantial offer provide minimal benefit to the prevailing party, and thus a reasonable attorney's fee may be less than the lodestar calculation."  *Id.*  "An offer is substantial if, as in this case, the offered amount appears to be roughly equal to or more than the total [amount due to the] prevailing party."  *Id.*  "In such circumstances, a district court should reflect on whether to award only a percentage (including zero percent) of the attorney's fees that were incurred after the date of the settlement offer."  *See also Gilfand v. Planey*, 2012 WL 5845530, *16 (N.D. Ill. 2012) ("Reducing the award is especially warranted here because the rejected offer would have settled the fee litigation. . . . At some point, the time attorneys expend to unsuccessfully advocate a higher award must be borne by the attorneys themselves.")

     7.   <u>Defendant Improperly Seeks Reimbursement of Expenses</u>

"'Costs' are not to be equated with expenses.  They are (with limited exceptions) a term of art defined by 28 U.S.C. § 1920."  *Abbott Laboratories v. Granite State Ins. Co.*, 104 F.R.D. 42, 43 (N.D. Ill. 1984).  The Federal Costs statute specifically identifies recoverable costs.  *See* 28 U.S.C. § 1920 (Exhibit Y); see also *Dream Custom Homes, Inc. v. Modern Day Const., Inc.*, 8:08-CV-1189-T-17AEP, 2011 WL 7764999 (M.D. Fla. July 12, 2011) (noting costs under the

Copyright Act should be analyzed by 28 U.S.C. § 1920).  Defendant has not identified any costs recoverable under this statute.[15]  Instead, at the end of each of Defense counsel's invoices is an "[a]dministrative charge of 5% of total fees for long distance telephone charges, facsimiles, standard postage, photocopies, etc."  Defendant should not be awarded these expenses. *See State, Dep't of Transp. v. Skidmore*, 720 So. 2d 1125, 1131 (Fla. Dist. Ct. App. 1998) (Fixed % cost surcharge is not recoverable).  Defendant also impermissibly seeks to recover expenses for mediation, parking; and legal research. *See Smith v. Reliance Standard Life Ins. Co.*, 2004 WL 2980683, *3 (S.D. Fla. 2004) ("Mediation is not compensable under 28 U.S.C. § 1920"); *R.L. v. Miami-Dade Cnty. Sch. Bd.*, 07-20321-CIV, 2013 WL 2157156, *13 (S.D. Fla. May 17, 2013) ("there is no statutory authority for taxing the costs of … 'parking,'"); *Corsair Asset Mgmt., Inc. v. Moskovitz*, 142 F.R.D. 347, 353 (N.D. Ga. 1992) (disallowing legal research costs).  In total, Defendant seeks to recover $2,930.48 for expenses which are not defined as costs by 28 U.S.C. § 1920.

### C.  Defendant's Request for Sanctions Under 28 U.S.C. § 1927 Is Frivolous

Defendant's assertion that attorney's fees against Plaintiff's counsel are proper under 28 U.S.C. § 1927 is frivolous.  The 11th Circuit has stated that "the plain language of the statute imposes three essential requirements for an award of sanctions under § 1927[.]" *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007).

> First, the attorney must engage in "unreasonable and vexatious" conduct. Second, that "unreasonable and vexatious" conduct must be conduct that "multiplies the proceedings." Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings, *i.e.,* the sanction may not exceed the "costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

*Id. citing Peterson v. BMI Refractories,* 124 F.3d 1386, 1396 (11th Cir.1997).  "The provisions of § 1927 are strictly construed." *Abreu v. Alutiiq-Mele, LLC*, 2012 WL 4369734 at *15 (S.D. Fla. 2012).  *See also Doria v. Class Action Servs., LLC*, 261 F.R.D. 678, 686 (S.D. Fla. 2009) (denying motion for sanctions under § 1927 where the court was "cognizant of the high standard for an award of sanctions . . . [and unable to] conclude that the conduct of Plaintiffs' counsel are so egregious and in bad faith as to warrant the imposition of Section 1927 sanctions.").  "To merit § 1927 sanctions, something more than a lack of merit is required." *Abreu supra*, 2012 WL

---

[15] Pursuant to L.R. 7.3(c) Defendant also failed to follow proper procedure for an award of costs and, as such, should not be awarded any costs.

4369734 at at *16.  Here, Malibu reasonably wanted to take one deposition for proper purposes. This was not egregious or done in bad faith but to the contrary furthered in the interests of the Copyright Act.  Everything following that deposition was aimed at resolving this fee dispute, and at all times Malibu has acted in good faith.

## VI.    CONCLUSION

For the reasons set forth above, awarding fees would not be consistent with the interests of the Copyright Act or equitable.  Accordingly, Plaintiff respectfully requests that the Court deny Defendant's motion.

Dated: July 24, 2013

Respectfully submitted,

By: /s/ M. Keith Lipscomb
M. Keith Lipscomb (429554)
klipscomb@lebfirm.com
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd., Suite 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile:  (786) 431-2229
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: /s/ M. Keith Lipscomb

20