**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**Case No. 1:12-CV-22768-CIV-SEITZ/SIMONTON**

MALIBU MEDIA, LLC,                            )
                                              )
       Plaintiff,                         )
                                              )
v.                                            )
                                              )
LEO PELIZZO,                                  )
                                              )
       Defendant.                         )
_____ )

## REPLY IN SUPPORT OF DEFENDANT'S VERIFIED MOTION FOR ATTORNEYS' FEES AND COSTS

     Defendant Leo Pelizzo ("Defendant" or "Mr. Pelizzo"), by and through undersigned counsel, hereby files the following reply in support of Defendant's Verified Motion for Attorneys' Fees and Costs.

     The circumstances surrounding Plaintiff's suit against Mr. Pelizzo raise a number of questions. These include (1) whether the Plaintiff was justified in filing suit against Mr. Pelizzo based solely upon an IP Address associated with a 700-unit condominium building; (2) whether the Plaintiff was justified in continuing to pursue that action seven (7) months after receiving evidence that Mr. Pelizzo was out of the country during the relevant infringement period; and (3) whether Mr. Pelizzo should be forced to pay the fees and costs that were incurred as a result of Plaintiff's filing and continued pursuit of its frivolous claims.   While most people would find these to be the most relevant questions, Plaintiff's counsel concludes – instead -- that Mr. Pelizzo's entitlement to fees hinges solely on the question of whether "allowing the copyright owner to depose the ISP further [sic] the interest of the Copyright Act." [DE #47, p. 6]

Employing characteristically inscrutable logic, Plaintiff argues that he was promoting the Copyright Act's interests when he embarked, like a real-life Inspector Clouseau, on a leisurely nine (9) month long investigation into why it was that he had sued the wrong person.  This thesis is presented within a revisionist narrative in which Plaintiff seamlessly interweaves fact and fiction; accordingly, in the interest of accuracy, Defendant offers the following corrections to the record:

## I.  **THE IP MISCORRELATION.**

### A.  **The IP Miscorrelation Was Not An Isolated Incident.**

On July 24, 2013, Plaintiff's counsel submitted a sworn statement as part of his response claiming this is "the first *and only* case where Malibu's counsel believes an ISP made a correlation error." [DE #47, p. 8 and corresponding Exhibit F, Declaration of M. Keith Lipscomb at ¶5].    Plaintiff attempts to bolster this claim and distance itself from Hotwire by citing Comcast's "absolutely certain[ty]" about its IP correlations.  Leaving aside the fact that Comcast had nothing to do with this proceeding, this was odd decision as Plaintiff had, two weeks earlier, acknowledged that it had made accusations against an innocent individual as a result ISP miscorrelation.  See Exhibit A (Declaration of David Kerr.)  Also, the ISP responsible for this miscorrelation was Comcast.

### B.  **Plaintiff Could Have Prevented the IP Miscorrelation.**

Given the reputational and financial harms that are inflicted by these "miscorrelations", the interests of justice would clearly be served by incentivizing behavior that would that would reduce their frequency.  As previously discussed, obtaining a MAC Address would have permitted Plaintiff to tie the infringing activity to a specific device.  Hotwire testified this information would have been provided if requested; Plaintiff, however, made no such request.

See *Deposition of Laurie M. Murphy*, P. 73, lns. 7-25; p.74 1-9.   Plaintiff also failed to request additional information after receiving <u>no</u> specifics from Hotwire regarding the date(s) and time(s) that Mr. Pelizzo's account was correlated to the IP Address.

It is also necessary to emphasize Plaintiff's subpoena duces tecum to Hotwire referenced a "hit date" that consisted of a single minute in a single day.   <u>See</u> <u>Exhibit B.</u>   Specifically, Plaintiff's requested identification of the subscriber associated with the infringing IP Address at 5:37p.m on February 6, 2012.   This "date" corresponds to only one (1) of the fourteen (14) infringing acts referenced in Plaintiff's Complaint.   Nevertheless, Plaintiff went ahead and filed action despite lacking any evidence whatsoever as to the infringement of thirteen (13) of works referenced in its Complaint.

Moreover, Mr. Pelizzo's misidentification might have been avoided if Plaintiff's request had properly targeted all the relevant "hit dates". Specifically, Hotwire's representative testified (1) that an IP correlation error could have resulted from human error; and (2) that the technician conducting the IP correlation was free to arbitrarily choose any time of day in targeting the search. <u>See</u> Murphy Deposition, P. 46, lns 7-29; P. 71, lns 4-20; P.78, lns 21-25, p. 79, ln 1. Assuming the misidentification occurred due to human error or failure to limit the IP search to the correct time, conducting an additional search for a separate hit date would have revealed an inconsistency.   Consequently, the misidentification might have been prevented had Plaintiff properly requested the searches that would have been necessary to support all of the claims made in its Complaint.

As noted above, Plaintiff's carelessness has now resulted in least two (2) IP miscorrelations. As Mr. Pelizzo knows first-hand, Plaintiff's tactics and decisions have the power to wreak havoc on an individual's finances and personal and business reputation.  Here,

3

Plaintiff's counsel hoped to obtain an easy default judgment by strategically filing suit against a foreign citizen that appeared to be unavailable based upon incomplete and ambiguous information.   Consequently, Defendant submits that the interests of justice would be furthered by granting Defendant's Motion and, thereby, (1) deterring copyright owners from hastily relying upon incomplete data and cursory investigations in filing suits against individuals; and (2) incentivizing copyright owners to request information capable of accurately identifying individuals associated with infringing activity.

## II. <u>THE PARTIES' BEHAVIOR.</u>

### A. <u>Plaintiff's Willingness to Press Forward Against Innocent Parties</u>

Plaintiff contends that "a reasonable and cost-conscious lawyer" would have called Plaintiff's counsel prior to filing a motion to dismiss and explained that "you've got the wrong guy." [DE #47, p.9]   A "reasonable and cost-conscious lawyer", however, would have been aware (1) that Plaintiff conducts its preliminary negotiations through non-attorney professional negotiators known to harass individuals at home, as well as at work; and (2) that Plaintiff habitually refuses to engage with subscribers maintaining their innocence.   Specifically, as shown in the attached declarations, an attorney attempting to initiate contact with Plaintiff's counsel is re-routed to a non-attorney negotiators employed by an "independent company that handle[s] Malibu Media's settlement communications." <u>See</u> Exhibit C, [Declaration of Morgan E. Pietz, at ¶18-23][1]   It would have been neither "reasonable" nor "cost-conscious" for the undersigned to spend time fruitlessly asserting Mr. Pelizzo's innocence to a negotiator (1) trained

---

[1] See Exhibit C, [Declaration of Christina E. Saunders at ¶4, Declaration of John A. Arsenault at ¶4

to maximize settlement payments; (2) authorized to engaged solely in verbal communications; and (3) not subject to rules governing professional conduct.[2]

Moreover, even if Plaintiff's counsel could have reached for a preliminary discussion, a prompt resolution would not have been reached. Plaintiff could have immediately filed a notice of dismissal upon receiving evidence that Mr. Pelizzo had been out of the country on February 6th and, therefore, away on the only "hit date" referenced in Hotwire's response. Instead, Plaintiff filed a response to Defendant's Motion accusing Mr. Pelizzo of downloading six (6) additional pornographic works[3] and went on to pursue the action for seven (7) additional months.

In a typographical error that could – at first glance—be mistaken for a rare moment of candor, Plaintiff's Response asserts that "Malibu has no desire to settle with innocent subscribers." [DE #47, P.7]. This truth behind this Freudian slip is demonstrated by the manner that Plaintiff reacts when confronted with such evidence. On June 28, 2012, Lindsey V. Maness, Jr. -- a 66-year old woman sued by the Plaintiff for allegedly downloading pornography-- attempted to provide the Plaintiff with evidence of her innocence. See Exhibit D, p.4 [Declaration of Lindsey V. Maness, Jr.]    Her letter was ignored. Id.   This has been an experience shared by other individuals that have offered the Plaintiff unfettered access to home networks and computers in an effort to prove their innocence.[4]   Consequently, there is no reason to believe Plaintiff would have behaved differently if provided evidence of Mr. Pelizzo's innocence.

---

[2] These negotiators – who have been known to harass individuals at home, as well as work – would not be subject to rules governing communications with clients or confidentiality.  See Exhibit C, Declaration of David S. Kerr at ¶8 and Declaration of John Does at ¶10
[3] See [DE #13]
[4] See Exhibit D, p. 1 [Declaration of Christina E. Saunders at ¶6-9, Declaration of John A. Arsenault at ¶6-9], Declaration of David S. Kerr at ¶5.]

**B.  <u>Defendant Decision to File a 12(b)(6) Motion</u>.**

The most important weapon in Plaintiff's arsenal is the embarrassing nature of its claims. By the time Mr. Pelizzo learned of the Plaintiff's claims, the Plaintiff had already filed its Complaint and the allegations made therein – as well as Mr. Pelizzo's identity – were already the subject of various internet blogs devoted to the subject of "copyright trolls."   Given the foregoing, Mr. Pelizzo was not interested in reaching a private settlement or paying money to the party wrongfully accused him of a crime.   Instead, Mr. Pelizzo wanted to publicly defend his reputation and – if possible – prevent this from happening to another individual in the future. For this reason, and due to the unique factual and legal issues involved, Defendant decided to respond to Plaintiff's Complaint by moving to dismiss.   Despite claiming that "scores of *identical* Rule 12(b)(6) have been *universally* rejected", Plaintiff fails to cite a single Rule 12(b)(6) opinion discussing the *identical* legal issues addressed in Defendant's Motion to Dismiss.   This is not surprising, as Plaintiff's suit was one of the first instances in an IP correlation led to the filing of an infringement suit against a named individual.   In light of the foregoing, Defendant's Motion was neither frivolous nor unreasonable.

**C.  <u>Defendant Mounted a Reasonable Defense</u>.**

Plaintiff's counsel knew – as early as October 2012-- that he had sued the wrong party. Nevertheless, rather than filing a notice of voluntary dismissal, Plaintiff moved forward with its action.   It was only following Hotwire's deposition – seven (7) months after the filing of this action --- that Plaintiff's counsel offered to dismiss this action.   This offer was made (1) contingent upon Mr. Pelizzo paying his own fees; and (2) with the understanding that Plaintiff would wait thirty-days (30) to dismiss, during which time it would attempt to locate the actual infringer.

6

Defendant responded to this offer by requesting that Plaintiff (1) file a public statement acknowledging Mr. Pelizzo's innocence; and (2) re-imburse Mr. Pelizzo for the fees and expenses incurred, which were estimated at $17,500.   Plaintiff's counsel did not respond with a counter-offer or relay a willingness to file the requested statement.   He reacted, instead, by serving "offensive discovery" and threatening to move forward until Mr. Pelizzo was left destitute.   Plaintiff's counsel now claims to have been "shocked" to learn that Mr. Pelizzo had – over the course of seven (7) months -- incurred around $17,500 in legal fees and expenses.   In fact, Plaintiff sheepishly explains his "regrettable emails" by claiming that the magnitude of these fees caused him to enter a dissociative state of rage for which he cannot be held responsible. Oddly, however, Plaintiff's has previously advised defendants that "the average cost of a copyright litigation *[sic]*is 600k through trial …[t]his is a relatively simple case but the fees will nevertheless be substantial and indubitably in the 6 figures."  See Exhibit D, p. 2.

Plaintiff states that the undersigned was – on October 23, 2012 -- "urged" not to spend money in this proceeding.   This statement was made only days after the Plaintiff alleged, as part of its Response to Defendant's Motion to Dismiss, that Mr. Pelizzo had infringed six (6) additional works.   The statement was also strategically made right before Defendant's deadline to file its reply.   Nevertheless, as shown in the billing statements attached to Defendant's Motion for Fees, the undersigned made minimal billing entries between the filing of its reply and the Hotwire deposition.   Specifically, the total number of hours billed during this relevant period was: 2.5 hours for November 2012; 1.7 hours for December 2012; 1.8 hours for January 2012; and 3 hours for February 2012.   These time entries could have been mitigated had Plaintiff not

delayed in taking Hotwire's deposition.[5]   More obviously, they could have been mitigated if Plaintiff had dismissed its action upon learning of Mr. Pelizzo's innocence.

Plaintiff also makes a number of misrepresentations regarding the parties' mediation.  Apart from being improper, Plaintiff's characterization of the substance of the mediation discussions is inaccurate.  First, as evidenced by Plaintiff's "regrettable" emails, it was not at all apparent that Plaintiff desired to dismiss this action. As evidenced by the filing of Plaintiff's notice of dismissal after mediation, Plaintiff's counsel mistakenly believed he could dismiss this action without Mr. Pelizzo's consent or leave of court.  Accordingly, if Plaintiff wanted to dismiss this action, it would have filed this notice prior to the mediation conference.  Furthermore, contrary to Plaintiff's claims, the mediation was not exclusively devoted to the question of fees.  By way of example, as Plaintiff's counsel was insistent upon shifting blame for the correlation error to a third-party, much of the mediation was devoted to Mr. Pelizzo's entitlement to and the phrasing of a public statement regarding his innocence.

### D.  Defendant's Fees were Reasonable.

As previously discussed, the undersigned's hourly rate was reasonable in light of the undersigned's experience and expertise in intellectual property law.   Further, because Mr. Pelizzo does not speak English, the undersigned's fluency in Spanish was necessary to legal representation.  By way of example, this undersigned's fluency in Spanish proved indispensible during the mediation conference and helped minimized expenses by obviating the need to obtain a translator.  The total fees incurred by Mr. Pelizzo between August 23, 2012 and May 31, 2013

---

[5] Plaintiff now acknowledges that the infringement complained of in this action continued until at least January 2013 [DE #47, p. 8].  It must be noted, then, that Plaintiff made a decision to delay Hotwire's deposition until mid-March 2013 (which, perhaps coincidentally and perhaps not, coincided with the expiration of Hotwire's two (2) month retention policy for subscriber records on its DHCP server.)  As a result, by the time of the deposition, any records pertaining to this infringement were unavailable.

were $24,867.25.   See [DE # 45, Supplemental Affidavit of Francisco Ferreiro, ¶3 and corresponding Exhibit B.]   The fees incurred from May 31, 2013 and until the filing of Defendant's Motion for Fees were $6,816.61. An additional six (6) hours, at a rate of $215, were billed in connection with preparing this reply. See Thompson v. Pharmacy Corp. of Am., Inc., 334 F.3d 1242, 1244-46 (11th Cir. 2003)(noting that fees attributable to time spent litigating the issue of attorneys' fees are also fully compensable.) Given the foregoing, as well as the complexity and novelty of the issues involved, the fees associated with the undersigned's representation were more than reasonable.

**IV.    CONCLUSION**.

For the reasons discussed above, Defendant submits that Defendant should be awarded reasonable attorneys' fees and expenses incurred in defending this action, as well as any further award the Court deems appropriate.

Respectfully submitted,

Dated: August 5, 2013                 By: s/Francisco J. Ferreiro
       Miami, Florida                      Francisco J. Ferreiro
                                           Florida Bar No. 37,464
                                           fferreiro@malloylaw.com
                                           MALLOY & MALLOY, P.A.
                                           2800 S.W. Third Avenue
                                           Miami, Florida  33129
                                           Telephone (305) 858-8000
                                           Facsimile (305) 858-0008

                                           Attorneys for Defendants

## VERIFICATION OF COUNSEL

In accordance with Southern District of Florida Local Rule 7.3, I verify under penalty of perjury that the foregoing is true and correct. Executed on August 5, 2013.

s/ Francisco J. Ferreiro
Francisco J. Ferreiro
Florida Bar No. 37,464

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

s/ Francisco J. Ferreiro
Francisco J. Ferreiro
Florida Bar No. 37,464

## <u>SERVICE LIST</u>

### Case No. 1:12-CV-22768-CIV-SEITZ/SIMONTON

M. Keith Lipscomb (429554)
klipscomb@lebfirm.com
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile: (786) 431-2229


*Counsel for Plaintiff*
Notices of Electronic Filing
Generated by CM/ECF