**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action Case No.: <u>1:12-cv-22768-PAS</u> |
| | ) | |
| v. | ) | |
| | ) | |
| LEO PELIZZO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S SUR-REPLY IN FURTHER SUPPORT OF ITS OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES

i

**TABLE OF CONTENTS**

I.    INTRODUCTION..................................................................................................1

II.   ARGUMENT .......................................................................................................1

    A.  Defendant's Premise That Its Overbilling Is Justified Does Not Further the Interests of the Copyright Act .................................................................................1

        1.  Plaintiff Could Not Have Known Hotwire Was Going to Correlate Incorrectly ..1

        2.  Defendant Relies on *Ad Hominem* Attacks to Support His Counsel's Overbilling .................................................................................................1

        3.  Plaintiff Did not File Suit Against Defendant Because He is a Foreign Citizen...2

        4.  Defendant's Logic Is Inconsistent with the Copyright Act.................................2

        5.  Based Upon the Subject Matter Plaintiff Acknowledges Heightened Scrutiny by the Courts .................................................................................................3

        6.  Courts Should Not Allow Defendants to Act Unreasonably Merely Because There is a Possibility That a Plaintiff May Attempt to Exert Unfair Leverage On Them .................................................................................................4

    B.  The Comcast Colorado Lookup Correctly Identified the Defendant ...........................4

        1.  The Comcast Colorado Response was not a Lookup Error..................................4

    C.  Providing Hotwire with other Dates and Times of Infringement Would Not Have Changed its Response ..................................................................................5

    D.  Providing Hotwire With Defendant's MAC Address Would Not Have Correctly Identified the Defendant ...................................................................................6

    E.  The Third Party Affidavits are from the Worst Offenders of Defense Counsel Abusive Litigation Tactics..................................................................................6

        1.  Mr. Kerr Has a Grudge Against Undersigned Because Undersigned Filed a Bar Complaint Against Mr. Kerr....................................................................6

        2.  This Court Should Not Consider the Declaration of Christine Saunders and John Arsenault .................................................................................................8

        3.  This Court Should Not Consider the Declaration of Morgan Pietz.....................8

        4.  This Court Should Not Consider the Declaration of an Anonymous John Doe....9

        5.  These Defense Counsel Should Not Be Encouraged .........................................9

III.  CONCLUSION ...................................................................................................10

## TABLE OF AUTHORITIES

### Cases

*Malibu Media v. John Doe*, 13-cv-00350 at CM/ECF 21 (D. Md. April 23, 2013)...................................... 8

*Malibu Media, LLC v. Doe*, 13-21579-CIV, 2013 WL 2950593 (S.D. Fla. June 14, 2013)....................... 3

*Malibu Media, LLC v. Doe*, 8:13-CV-857-T-35TGW, 2013 WL 1620366 (M.D. Fla. Apr. 15, 2013) ..... 3

*Malibu Media, LLC v. Doe*, CIV. JKB-13-512, 2013 WL 3732780 (D. Md. July 12, 2013).................... 3

*Malibu Media, LLC v. Does 3, 9, 16, 17*, 2013 WL 1461635, at FN 11 (D. Colo. Feb. 12, 2013)............ 8

*Malibu Media, LLC v. John Doe Subscriber Assigned IP Address 174.51.234.104*, No. 13-CV-00307-WYD-MEH, 2013 WL 3753436 (D. Colo. July 14, 2013)................................................................... 9

*Malibu Media, LLC v. Maness*, No. 12-CV-01873-RBJ-MEH, 2012 WL 7848837 (D. Colo. Dec. 4, 2012)...................................................................................................................................................... 7

*Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F. 2d 852 (5th Cir. 1979) .............................. 2

*Sony v. Tennenbaum,* 2011 WL 4133920 at * 11 (1st Cir. 2011) ............................................................. 3

## I.   INTRODUCTION

Plaintiff submits the following sur-reply in order to specifically address that: (a) Defendant's attacks on undersigned and Plaintiff's character do not justify gross overbilling and unnecessary work; (b) Comcast correctly correlated the subscriber to the IP address in Colorado, Defendant incorrectly stated the facts; (c) neither providing Hotwire with multiple dates of infringement nor requesting the MAC address would have prevented the Hotwire error; (d) the attorneys that have provided declarations seeking to discredit Plaintiff and undersigned are biased and engage in abusive or unreasonable litigation tactics designed to frustrate Plaintiff's ability to protect its copyrights.

## II.   ARGUMENT

### A.   Defendant's Premise That Its Overbilling Is Justified Does Not Further the Interests of the Copyright Act

#### 1.   Plaintiff Could Not Have Known Hotwire Was Going to Correlate Incorrectly

Defendant's argument that Plaintiff should have known Hotwire's correlation was inaccurate is unsupported by the facts.  This is the first and only correlation error that has ever occurred.  Further, Defendant's assertion that Plaintiff should have deposed Hotwire sooner should ring hollow, because Plaintiff deposed Hotwire the very first time Plaintiff ever questioned the correlation.  The entire purpose of deposing Hotwire was to ascertain how the mistake happened.  This knowledge furthers the interests of the Copyright Act.

#### 2.   Defendant Relies on *Ad Hominem* Attacks to Support His Counsel's Overbilling

Defendant next argues that he was justified in unreasonably overbilling his client and overworking this matter because Plaintiff and undersigned are unreasonable.  This too is belied by the facts of this case.  Further, implicit in his argument is the acknowledgement that his actions were unreasonable.

Defense counsel's *ad hominem* attacks against undersigned are particularly offensive because undersigned has had a case against defense counsel's law firm before which was litigated amicably and all parties acted reasonably.  Further, Lipscomb Eisenberg and Baker, PL is an AV rated law firm which focuses on Intellectual Property in Miami and undersigned has never given adverse counsel any reason to believe that he has to overwork files to reach a reasonable resolution with undersigned.  It's particularly frustrating that Defense counsel

1

litigates this way because that is not the way undersigned or Plaintiff desires to litigate cases, nor do undersigned or Plaintiff desire to exchange an offensive *ad hominem* attack in this or any other litigation.

>        3.   Plaintiff Did not File Suit Against Defendant Because He is a Foreign Citizen

Defendant attempts to impute an improper motive on Plaintiff by stating: "Plaintiff's counsel hoped to obtain an easy default judgment by strategically filing suit against a foreign citizen that appeared to be unavailable based upon incomplete and ambiguous information." CM/ECF 49 at *4. This statement is akin to speculation which is not proper. *See Reed v. Great Lakes Companies, Inc.*, 330 F.3d 931 (7th Cir. 2003) ("The sanctions order thus appears to rest on nothing more solid than the judge's speculation that Reed is an extortionist. The speculation is too thin to sustain that order.") It is also offensive and absurd. When Plaintiff brought this action the infringement from the IP address was ongoing. The accusation that Plaintiff targeted Defendant because he is from a foreign country is unjustified when it appeared as if Defendant was in the country, illegally infringing Plaintiff's movies.

>        4.   Defendant's Logic Is Inconsistent with the Copyright Act

Defendant's attempt to justify his performance of unnecessary work and his gross overbilling relies on two thinly veiled and related *ad hominem* attacks which essentially assert: (a) Plaintiff is suing to enforce copyrights covering adult sexual content; since some members of society are embarrassed by sex, Plaintiff must be suing to embarrass Defendants (*see generally*, CM/ECF 49 at *5); and (b) anyone who sues a peer-to-peer infringer based on an IP Address (which does not equal a person) is a bad person because they may be suing the wrong person (*see generally, Id*. at p. *4-5). The attacks are related insofar as the prejudices associated with sex are intended to heighten the concern associated with protecting innocent subscribers.

Argument (a) is: (1) intended to appeal to prejudices associated with sex, and (2) an obviously false syllogism. First, the Court should resist the temptation to rule based upon prejudices associated with the sexual content of the copyrighted works. Indeed, adult content is copyrightable and should not be treated any differently than other types of work. *See Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F. 2d 852 (5th Cir. 1979) (emphasizing that pornography is copyrightable and that owners of the copyrights covering pornographic works should be afforded the same rights under the Copyright Act as anyone else.) Second, the false

syllogism in argument (a) ignores the possibility (and here the reality) that Plaintiff is suing to enforce its statutory rights and that any embarrassment is simply an unintended by-product.

Argument (b) was expressly rejected by Congress.  Indeed, through the Digital Theft Deterrence and Copyright Damages Improvement Act of 1999 "Congress . . . amended the Copyright Act . . . to increase the minimum and maximum awards available under § 504." *Sony v. Tennenbaum,* 2011 WL 4133920 at * 11 (1st Cir. 2011).   At that time, Congress found on-line piracy resulted in "lost U.S. jobs, lost wages, lower tax revenue, and higher prices for honest purchasers." *See* CM/ECF 47-19 at *3.  Further, as the former Register of Copyrights said, "for many people, the best form of education about copyright in the internet world is the threat of litigation."[1]   Accordingly, suing peer-to-peer infringers does not make someone a bad person. Instead, it furthers the interest of the Copyright Act and our country because it helps fight the problem of "lost U.S. jobs, lost wages, lower tax revenue, and higher prices for honest purchasers."   And, the only way to sue for peer-to-peer infringement is to sue the subscriber who is the most likely infringer.

>   5.   Based Upon the Subject Matter Plaintiff Acknowledges Heightened Scrutiny by the Courts

Given the subject matter of Plaintiff's works, Plaintiff acknowledges that less scrupulous attorneys may take advantage and insert undue pressure on defendants.  Accordingly, Plaintiff has acquiesced in a number of reasonable measures imposed by judges to lessen the potential for unfair litigation tactics.  *See e.g. Malibu Media, LLC v. Doe*, 13-21579-CIV, 2013 WL 2950593 (S.D. Fla. June 14, 2013) (providing for a protective order for the defendant); *Malibu Media, LLC v. Doe*, 8:13-CV-857-T-35TGW, 2013 WL 1620366 (M.D. Fla. Apr. 15, 2013) (ordering that undersigned must inform defendant of his or her right to legal counsel and notifying defendant that anything provided by the John Doe can and likely will be used against him or her, among other restrictions); *Malibu Media, LLC v. Doe*, CIV. JKB-13-512, 2013 WL 3732780 (D. Md. July 12, 2013) (prohibiting any settlement communications without leave of court).

---

[1] *See* http://www.copyright.gov/docs/regstat090903.html

Significantly, however, unless and until a court finds in a specific case that Plaintiff has used that leverage to perform a bad act, it should not base its decision on the mere potential that Plaintiff could have done it.

6. Courts Should Not Allow Defendants to Act Unreasonably Merely Because There is a Possibility That a Plaintiff May Attempt to Exert Unfair Leverage On Them

Defendant argues that because he assumed that Plaintiff would act unreasonably, he was justified in turn to react unreasonably, despite Plaintiff's behavior having been reasonable. This argument puts the cart before the horse. Now, Defendant resorts to *ad hominem* attacks to justify the overbilling. The Court should align the interests of the court system, the Copyright Act, and the copyright holder against Defendant's false assumptions and rule based on the merits of the case. Regardless of the content of the suit, or the outrage of Defendant, all counsel should be required to act reasonably in the proceedings. Indeed, in its Memorandum in Opposition to Defendant's Motion for Attorney's Fees, Plaintiff proposes a rule for attorney's fees in these cases that incentivizes cooperation between the parties. *See* CM/ECF 47 at *16, FN 11

**B. The Comcast Colorado Lookup Correctly Identified the Defendant**

The Hotwire misidentification is a onetime unique event that neither Plaintiff nor undersigned has ever experienced. Defendant's attempt to state otherwise was done in bad faith to bolster a request for an improper fee award.

1. The Comcast Colorado Response was not a Lookup Error

In a classic case of "gotcha" litigation, Defendant disingenuously states that he "offers the following corrections to the record". *See* CM/ECF 49 at *2. In doing so, Defendant refers to a case in the District Court of Colorado where Comcast recently provided Plaintiff's Colorado counsel, Jason Kotzker, with two names of defendants. One of the defendants was represented by Mr. Kerr. *See* Exhibit A, Declaration of Jason Kotzker at ¶ 2.

Comcast's response contained the name and information for defendants known as John Doe 16 and John Doe 22. *Id*. at ¶ 3. In that response, Comcast provided the name, IP address, date of infringement, phone number, and address of the defendants. *Id*. at ¶ 4. Comcast erroneously listed the same name for both defendants, but all other identifying information was correct. *Id*. at ¶ 5. When Mr. Kotzker emailed Mr. Kerr, the email contained the name of John Doe 16, and not John Doe 22, the defendant Mr. Kerr represented. *Id*. at ¶ 6. However, the

4

response contained the correct address and phone number for Mr. Kerr's client, and upon clarification with Comcast, it stated that Mr. Kerr's client (who received the subpoena notice and filed a motion to quash) was correctly identified as the defendant, but Comcast had failed to provide her name, instead listing John Doe 16's name twice. *Id*. at ¶ 7.

Defendant incorrectly states that "Plaintiff had, two weeks earlier, acknowledged that it had made accusations against an innocent individual as a result [sic] ISP miscorrelation." First, Mr. Kotzker had not informed Malibu Media or undersigned of the error because it was minor and inconsequential. *Id*. at ¶ 8. Second, the Comcast correlation did not result in accusations against an innocent individual but instead against a defendant in the case. *Id*. at ¶ 9. Indeed, Comcast was reporting the identities of two defendants that filed motions to quash, both of which were denied. *Id*. at ¶ 10. Comcast had correctly correlated the IP address to each individual, unlike the current case. *Id*. at ¶ 11.

### C. Providing Hotwire with other Dates and Times of Infringement Would Not Have Changed its Response

The IP address in this case was used to infringe Plaintiff's movies throughout the entire course of 2012. Providing Hotwire with the other dates and times of infringement would not have impacted its response because the same individual used that IP address at all times. Statistically, it is almost impossible that more than one person used that IP address to infringe Plaintiff's content.

To explain, Hotwire uses dynamic IP Addresses. In other words, Hotwire's computer program allows—but does not require—Hotwire to assign a subscriber a different IP Address if the subscriber has not used his or her internet for at least 24 consecutive hours. *See* Deposition of Laurie M. Murphy ("Hotwire Depo."), CM/ECF 38-1 at *33-3. During the full calendar year between July 1, 2012 and July 1, 2013, there were only 50 unique IP addresses that trace to Hotwire that infringed one or more of Plaintiff's works. *See* Fieser Decl., *Malibu Media v. Fitzpatrick*, 12-cv-22767-PAS, CM/ECF 25-3, at ¶ 27 and Exhibit 2. Hotwire has 65,000 subscribers in Florida. *See Id*. at Pl. Stat. Undisp. Mat. Facts, CM/ECF 25-1, at ¶ 7 and Exhibit E. Plaintiff does not know how many IP Addresses Hotwire has allocated to its 65,000 Florida subscribers. However, Plaintiff does know that Hotwire must have a sufficient number of IP Addresses for each of its Florida subscribers who are simultaneously using the Internet. Even if one were to assume that at peak times only 1 in 10 of Hotwire's subscribers were simultaneously using the Internet, that would mean that Hotwire has 6,500 IP Addresses to

distribute among its 65,000 Florida subscribers.   Since there were only 50 unique IP addresses that infringed, and Hotwire has at least 6,500 IP Addresses, the odds that the same IP address was used by two different infringers is: 50 divided by 6,500 = 0.00769).  In other words, 7 out of 1,000.

Here, the IP address never changed owners because it continuously downloaded Plaintiff's movies.  Therefore, the only reasonable explanation is that the ports in Defendant's building were mislabeled.  *See* CM/ECF 38-1 at 50:2.   Even if Plaintiff had provided Hotwire with different dates and times of infringement, each correlation would point to Defendant because Defendant's building reported Defendant as the owner of that IP address, without correctly verifying each apartment.

### D. Providing Hotwire With Defendant's MAC Address Would Not Have Correctly Identified the Defendant

Plaintiff did not request a MAC address from Hotwire because MAC addresses do not aid Plaintiff in identifying a defendant.  Indeed, MAC addresses identify the router of an IP address and can be changed by a defendant after the infringement occurred. Because of this ability to manipulate, MAC addresses cannot be relied upon to accurately correlate the source from which the infringement emanated.

Further, even if Plaintiff had requested the MAC address in this case, without inspecting Defendant's router to see if the MAC address matches, it is useless.  Plaintiff could not have inspected Defendant's router before filing suit because Defendant did not communicate with Plaintiff.  After Defendant informed Plaintiff it had been out of the country, any information regarding his MAC address was redundant.

### E. The Third Party Affidavits are from the Worst Offenders of Defense Counsel Abusive Litigation Tactics

Defendant supports his attacks on undersigned and Plaintiff with third party affidavits from the worst offenders of abusive litigation tactics.

1. <u>Mr. Kerr Has a Grudge Against Undersigned Because Undersigned Filed a Bar Complaint Against Mr. Kerr</u>

Mr. Kerr is the only attorney that undersigned has ever filed a bar complaint against. *See* Exhibit B, Declaration of M. Keith Lipscomb at ¶ 2.   When undersigned first started representing copyright holders in BitTorrent copyright litigation, without provocation Mr. Kerr called undersigned.  *Id*. at ¶ 3.  Although he had no experience with undersigned, Mr. Kerr

6

immediately accused undersigned of being unethical. *Id*. at ¶ 4.  Thereafter, Mr. Kerr called undersigned and berated a receptionist for several minutes. *Id*. at ¶ 5.  At that time, upon information and belief, he was working with Bradford Patrick[2] and representing clients in Florida. *Id*. at ¶ 6.  During his tirade against undersigned's receptionist he threatened to report undersigned to the Florida bar. *Id*. at ¶ 7.  This violated Florida and Colorado's bar rules because he was attempting to gain an unfair advantage by threatening to file a bar complaint against undersigned. *Id*. at ¶ 8.  In response, undersigned filed a bar complaint in Colorado. *Id*. at 9.  Thereafter, Mr. Kerr sent undersigned an email stating that he would not represent any client in a peer-to-peer case against undersigned. *Id*. at 10.  Ultimately, undersigned did not pursue the bar complaint because undersigned does not desire to litigate against Mr. Kerr or any other attorney by using the types of offensive tactics employed by Mr. Kerr. *Id*. at 11.  Undersigned's full desire is to litigate the merits of the case and avoid unreasonable *ad hominems*. *Id*. at 12.

### a.   *Mr. Kerr Also Engages In Improper and Gross Overbilling*

Ironically, Mr. Kerr has been admonished for the same conduct that Defense counsel engages in here.  Specifically, in a published opinion, Judge Hegarty of the District Court of Colorado found Mr. Kerr sought attorney's fees against Plaintiff with "unclean hands". *See Malibu Media, LLC v. Maness*, No. 12-CV-01873-RBJ-MEH, 2012 WL 7848837 (D. Colo. Dec. 4, 2012).  Mr. Kerr's unclean hands resulted from filing a frivolous motion to dismiss, the very behavior Defendant seeks to have Mr. Kerr justify.

> Defendant's decision to file a motion to dismiss after the District Court closed the case renders Defendant's hands unclean in this regard, as Defendant himself caused the unnecessary expenditure of judicial resources in filing a motion that he knew would be moot. Likewise, Defendant's assertion of a claim for relief under Rule 11 that is improper under both the text of the Rule and controlling Tenth Circuit precedent unreasonably multiplies the work of the Court and of Plaintiff.

*Malibu Media, LLC v. Maness*, No. 12-CV-01873-RBJ-MEH, 2012 WL 7848837 (D. Colo. Dec. 4, 2012).

---

[2] It is unclear why Defense counsel chose to include a random unrelated email between undersigned and Mr. Patrick in his Exhibits without any reference in his Reply.

2. <u>This Court Should Not Consider the Declaration of Christine Saunders and John Arsenault</u>

Undersigned has never had any contact with either of the above attorneys and therefore does not see how they could possibly have any impact on this case.  That being said, Plaintiff does not examine every laptop proffered to show innocence before the official discovery period because Plaintiff cannot verify whether it was the actual laptop owned by Defendant during the time of infringement.

The District Court of Colorado, where each of these *exact* affidavits was originally filed, found that Plaintiff's refusal to inspect laptops prior to the discovery period is reasonable given the time and expense involved with scanning electronic devices at the pre-discovery stage.

> Doe # 17 attaches affidavits from three attorneys who practice in this District and from two parties (one identified as "John Doe," but it is unclear whether it is Doe # 17) in which these individuals attest that, when offered the opportunity to investigate the parties' claimed innocence, Plaintiff is not interested in doing so. The Court does not doubt the description of these affiants' experiences, but the Court also has witnessed firsthand the Plaintiff's willingness to resolve cases without any monetary payment when a Defendant credibly denies infringement. Moreover, while the Court encourages the Defendants' willingness and attempts to demonstrate their non-participation in the alleged conduct, the Court also recognizes the time and expense involved with scanning electronic devices for evidence of infringing activity, especially at the pre-discovery stage of litigation.

*Malibu Media, LLC v. Does 3, 9, 16, 17*, 2013 WL 1461635, at FN 11 (D. Colo. Feb. 12, 2013).

This issue is entirely irrelevant to the case at hand because there was never an issue as to whether Defendant's laptop contained infringing content.

3. <u>This Court Should Not Consider the Declaration of Morgan Pietz</u>

Mr. Pietz cannot credibly speculate as to undersigned's actions because undersigned has never directly spoken to Mr. Pietz.  Indeed, the only interaction undersigned ever had with Mr. Pietz was during a telephonic hearing in the District Court of Maryland where the Honorable Judge Titus and Judge Grimm sought different view points on how best, procedurally, to move forward with Malibu Media's lawsuits.  *See Malibu Media v. John Doe*, 13-cv-00350 at CM/ECF 21 (D. Md. April 23, 2013).  During that telephonic hearing Mr. Pietz was chastised for attempting to lecture Judge Titus and Judge Grimm on how to interpret the Federal Rules of Civil Procedure.  *Id*.

Further, Mr. Peitz has been criticized as "unreasonable" for some of the motions he has filed in Plaintiff's cases.  *See Malibu Media, LLC v. John Doe Subscriber Assigned IP Address*

*174.51.234.104*, No. 13-CV-00307-WYD-MEH, 2013 WL 3753436 (D. Colo. July 14, 2013) ("To suggest that Defendant's failure to participate in a process intended to discover his identity should be used as a basis for restricting the discovery is, at a minimum, unreasonable").

Here, defense counsel cites to Mr. Peitz's declaration to speculate that undersigned may have referred him to Plaintiff's agent, Elizabeth Jones, to handle the matter. At no point in time during this case did anyone on behalf of Plaintiff have contact with Defense counsel other than undersigned's firm. Mr. Pietz's declaration is irrelevant and has no bearing on this case.

Further, Mr. Pietz's actions epitomize the exact type of defense counsel behavior that this Court should dissuade in its ruling. Indeed, Mr. Pietz's declaration states that his first ever representation and contact with anyone involving Malibu Media was on June 13, 2012, when he contacted Malibu Media's California counsel, Leemore Kushner. *See* Pietz Declaration at ¶ 18. Amazingly, two days before ever contacting defense counsel, on June 11, 2013, Mr. Pietz took the time to register the following domain names: www.trolldefenselawyer.com and www.malibumedialawsuit.com. *See* Exhibit C.

### 4.   This Court Should Not Consider the Declaration of an Anonymous John Doe

The declaration of the anonymous John Doe should not be considered in this case because it is hearsay and inadmissible. Indeed, the events that the John Doe describes took place over two years ago, long before Malibu Media ever filed a suit for copyright infringement, and is not relevant to any of the facts in this case. Malibu Media has stopped using any third party agents to negotiate settlements on all of its suits filed in 2013 and in this case only attorneys or undersigned's paralegals contacted adverse counsel. Further, out of all the people Malibu Media has ever sued, this is the first and only declaration undersigned has ever seen of this kind.

### 5.   These Defense Counsel Should Not Be Encouraged

Instead of addressing the legal issues raised in Plaintiff's opposition, or the glaring defects in Defendant's bill, Defendant chose to involve the above attorneys and defendants in the litigation matter. Defendant justified his attorney's fee bill based on faulty logic and *ad hominem* attacks. This Court should not reward Defense counsel with their fees when they acted unreasonably. Doing so will only encourage the above attorneys, and countless others, to frustrate the litigation process and try to win, not on the merits, but through abusive litigation tactics and *ad hominem* attacks. This does not further the purpose of the Copyright Act.

III.    **CONCLUSION**

For the reasons set forth above, as well as in Plaintiff's Memorandum in Opposition, awarding fees would not be consistent with the interests of the Copyright Act or equitable. Accordingly, Plaintiff respectfully requests that the Court deny Defendant's motion.

Dated: October 24, 2013

Respectfully submitted,

By: /s/ *M. Keith Lipscomb*
M. Keith Lipscomb (429554)
klipscomb@lebfirm.com
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd., Suite 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile:  (786) 431-2229
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 24, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: /s/ *M. Keith Lipscomb*