**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 12-22768-CIV-SEITZ/SIMONTON**

**MALIBU MEDIA, LLC,**

      **Plaintiff,**

**v.**

**LEO PELIZZO,**

      **Defendant.**

_____/

**REPORT AND RECOMMENDATION RE: DEFENDANT'S VERIFIED MOTION FOR
ATTORNEY'S FEES AND COSTS**

      This matter comes before the Court on Defendant Leo Pelizzo's Verified Motion
for Attorney's fees and costs Against Plaintiff and Lipscomb, Eisenberg & Baker, P.L.
(DE # 41), pursuant to an Order of Reference entered by the Honorable Patricia A. Seitz,
United States District Judge.  (DE # 19).  Plaintiff Malibu Media, LLC ("Plaintiff") filed a
response (DE # 45), Defendant filed a reply (DE # 46) along with supplemental authority
(DE # 47) and Plaintiff filed a sur-reply (DE # 52).  Having considered the parties' papers
and the record, and for the reasons set forth below, the undersigned recommends that
the Court grant in part and deny in part Defendant's motion for fees.  Specifically, the
undersigned recommends that the motion be denied with respect to the request for fees
pursuant to the Copyright Act; and, that it be granted in part with respect to the fees
requested pursuant 28 U.S.C. § 1927; and, that fees and mediation costs be awarded in
the amount $6,815.70, which covers only the work performed after March 13, 2013, and
through the mediation of this matter.

## I.      BACKGROUND

Plaintiff initiated this matter on July 27, 2012, when it filed a Complaint against Defendant alleging he infringed the copyrights of Plaintiff's adult films through the use of a filing sharing protocol known as BitTorrent.[1]  (DE # 1).  Prior to filing suit, Plaintiff's investigator, IPP Limited, identified the Internet Protocol ("IP") address 24.238.22.207 infringing 14 of Plaintiff's copyrighted movies a total of 337 times.  (DE # 47-13).  Plaintiff then obtained a subpoena commanding the Internet Service Provider ("ISP"), Hotwire Communications ("Hotwire"), for that IP address to provide the name, address, telephone number, email address and Media Access Control ("MAC") address for the individual assigned that IP address.  (DE # 47-9, ¶2).  In response, Hotwire identified Defendant as the subscriber of the IP address being used to infringe Plaintiff's movies on BitTorrent. (DE # 47-8).

Plaintiff served Defendant with the Complaint on September 5, 2012 (DE # 6), and Defendant's counsel thereafter filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (DE # 7).  Defendant argued that Plaintiff's Complaint contained only vague or conclusory statements and failed to set forth a sufficient basis for identifying Plaintiff as the infringer responsible for using the assigned IP address during the relevant time period.  (*Id.* at 4-8).  Plaintiff also submitted his affidavit in support of that motion to establish that he was in Venezuela for the "vast majority" of the time period that the infringement occurred, that the IP address identified by Plaintiff was not

---

[1] *See* docket entry # 16, pages 2-3, for a detailed discussion of the BitTorrent protocol.

his IP address and that he had never used or heard of BitTorrent prior to this lawsuit. (DE # 7-1, at ¶¶5, 6 and 17).  The presiding District Judge denied the motion on December 21, 2012, finding the allegations of the Complaint, together with the references in Exhibit A to the Complaint, sufficient to associate Defendant's alleged IP address with the incidents of infringement observed by IPP Limited.  (DE # 16 at 6-7).

Thereafter, the parties' jointly moved for two extensions of time for Defendant to respond to the Complaint.  (DE ## 17,22).  The first motion indicated that Plaintiff would depose Hotwire in February 2013, and that a possible settlement was contingent on that deposition testimony.  (DE # 17).  The parties maintained that an extension of time was consistent with Federal Rule of Civil Procedure 1's instruction to promote the inexpensive determination of every action.  (*Id*. at ¶6).  The second motion indicated that the Plaintiff rescheduled the Hotwire deposition for March and sought to extend the deadline for Defendant to file an answer to a date after the deposition since Plaintiff believed a settlement was likely following the deposition.  (DE # 22 at ¶4).  The motion further provided that, "[i]n order to minimize attorneys' fees, Plaintiff has agreed to allow Defendant an additional sixty (60) days" to respond to the Complaint.  (*Id.* at 5).  The Court granted the first motion (DE # 18), but denied the second motion (DE # 22). Defendant filed his answer on February 22, 2012.  (DE # 24).  On March 13, 2013, the Court scheduled the parties' mediation for April 4, 2013.  (DE # 26).

On March 13, 2013, Plaintiff deposed the Assistant General Counsel for Hotwire, Laurie Murphy, in Philadelphia, Pennsylvania.  (DE # 38-1).  Defense counsel appeared by telephone.  (*Id.*).  Murphy testified that after she received Plaintiff's subpoena, she

emailed the IP address and the date and time of infringement to her technician, Milton Davidson, so that he could identify a subscriber.  (*Id.* at p. 56).  Davidson identified Defendant as the subscriber associated with the IP address, which Murphy, in turn, provided in a response to the subpoena.  (*Id.* at 24).  Murphy also stated that Defendant's building makes use of "dynamic IPs," which means that if a subscriber does not use the internet for 24 hours, the IP address will return to a "pool" and be made available to another subscriber in the building.  (*Id.*).  She also conceded that Defendant's building could have incorrectly labeled the port connected to Defendant's condominium, which would have resulted in the wrong IP address being associated with Defendant.  (*Id.* at 39).

Following the Hotwire deposition on March 13, 2013, Plaintiff offered to dismiss the lawsuit contingent upon both parties signing mutual releases.  (DE # 47-6, ¶12).  On March 21, 2013, Defendant countered with an offer for Plaintiff dismiss the action with prejudice, pay $17,500 in fees and file a statement with the Court indicating that Defendant was incorrectly identified as the downloader of the pornographic films.  (DE # 47-14).  Plaintiff's counsel immediately rejected the counter-proposal (DE # 41-2 at 1) and warned defense counsel that his client "will lose everything he owns and owe my clients hundreds of thousands of dollars" after a trial of this matter.   (DE # 41-2).  The following day, Plaintiff propounded nineteen requests for production and twenty-five interrogatories on Defendant.  (DE ## 41-3, 41-4).

The parties attended mediation on April 4, 2013.  Much of the five hour mediation was devoted to the amount of attorney's fees that were appropriate in this matter and the

phrasing of a public statement regarding Defendant's innocence.  (DE # 49 at 8; DE # 47-6, ¶16).  Plaintiff's counsel informed defense counsel at the mediation that he would be dismissing the case.   (DE # 47-6, ¶1).  On April 11, 2013, Plaintiff offered to pay Defendant $13,000 in fees, which Defendant rejected as his attorney's fees at that time were approximately $24,000.  (DE ## 47-15, 47-16 and 47-17).  Plaintiff filed a Notice of Voluntary Dismissal (DE # 33) that same day, which was stricken on April 15, 2013, for failing to comply with Federal Rule of Civil Procedure 41(a).  (DE # 34).  Plaintiff then filed a motion to dismiss with prejudice (DE # 37) that the Court granted, reserving  for a later determination the issue of what, if any, attorney's fees or sanctions were appropriate in this case.  (DE # 40).  Thereafter, Defendant filed the instant motion seeking an award of fees against Plaintiff pursuant to the Copyright Act and/or an award of fees as a sanction against Plaintiff's counsel pursuant to 28 U.S.C. § 1927.  (DE # 41).

II.    LEGAL STANDARD AND ANALYSIS

A.    Attorney's Fees Under the Copyright Act

"While it is the general rule in American jurisprudence that litigants must bear their own attorney's fees, Congress has provided an exception for prevailing parties of copyright litigation."  *Oravec v. Sunny Isles Luxury Ventures L.C.*, Case No. 04-22780, 2010 WL 1302914, *3 (S.D. Fla. Mar. 31, 2010).  The Copyright Act grants the district court the power to award a "reasonable attorney's fee to the prevailing party."  17 U.S.C. § 505; *Dawes-Ordonez v. Forman*, 418 Fed. Appx. 819, 821 (11th Cir. 2011).  Section 505, however, does not provide for automatic recovery of attorneys' fees by the prevailing party.  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994).  Rather, fees are to be awarded

5

"only as a matter of the court's discretion."  *Id.*  While "[t]here is no precise rule or formula for making these determinations," courts typically consider factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Id.* at 534 n.19 (citation omitted); *Dawes-Ordonez*, 418 Fed. Appx. at 821.  The application of these factors must be "faithful to the purposes of the Copyright Act" and "applied to prevailing plaintiffs and defendants in an evenhanded manner."  *Fogerty*, 510 U.S. at 534 n.19.  "In copyright cases, although attorney's fees are awarded in the trial court's discretion, they are the rule rather than the exception and should be awarded routinely."  *Oravec*, 2010 WL 1302914 at *3 (quotations omitted).

 The parties concede that Defendant is a prevailing party in this matter due to Plaintiff's voluntary dismissal of this action with prejudice.  Therefore the Court turns to the four factors described in *Fogerty*.[2]

### 1.    Plaintiff's Subjective Motivation

Defendant asserts that Plaintiff's desire for commercial gain was its subjective motivation for this suit.  (DE # 41 at 12)  Defendant argues that filing a lawsuit for infringing obscene films will strain a defendant's relationships with family and friends

---

[2]Plaintiff frames the issue for the Court to decide as one of first impression, *viz*, whether a copyright owner's deposition of an ISP provider furthers the interest of the Copyright Act when it appears the ISP provider made an error in correlating an IP address to a subscriber.  (DE # 47 at 1)  The Court does not share Plaintiff's view that this is the critical issue for the Court's determination.  As set forth below, the Court must look to all of the Plaintiff's actions in prosecuting this case from the pre-suit time period through the instant dispute over fees.

and cause both the innocent and guilty infringer to pay a few thousand dollars to Plaintiff rather than risk the filing of a public suit.  (*Id.*).  Defendant also suggests that Plaintiff's counsel made no effort to contact defense counsel until after the motion to dismiss had been filed, and only then to seek an extension of time to file a response, not to discuss the case.  (*Id.* at 13).  Defendant points to the repeated cancellation and postponing of the Hotwire deposition by Plaintiff's counsel as evidence that Plaintiff has "continued to drag its feet" throughout this proceeding.  (*Id.*).  Relying on *Oravec*, Defendant maintains that, in sum, Plaintiff's behavior consistently "indicate[d] a motivation to enlarge ... profits to increase [the] potential recovery for copyright infringement" in this case.  (*Id.* at 13-14).

The Court respectfully disagrees with all of Defendant's assertions.  While it is true that a lawsuit for the infringement of pornographic films could subject a defendant to public embarrassment and result in an innocent infringer paying thousands of dollars to avoid a public lawsuit, Defendant has not directed the Court to any evidence that would support even an inference that Plaintiff filed this suit to shame Defendant into a pre-suit settlement.[3]  Defendant has not provided a single communication from Plaintiff wherein it sought to settle this matter in exchange for thousands of dollars either before or after filing suit.

Moreover, Defendant has not done anything to disprove Plaintiff's stated

---

[3]Defendant's reliance on and citation to acts and practices that occurred in other unrelated cases does not aid the Court's analysis here.  (DE # 49-3).  This was a suit filed without bad faith against one prolific infringer and survived a motion to dismiss. Defendant's reliance on inapposite circumstances unrelated to this litigation does not materially advance his position here.

motivation for filing suit, that the IP address associated with Defendant was one of the worst infringers in the world of Plaintiff's movies. (DE # 47 at 3). That assertion remains uncontroverted on this record. Unlike the BitTorrent cases cited by Defendant (DE # 41 at 12) (citing, e.g., *Malibu Media, LLC v. John Does 1-10*, No. 12-2623, 2012 WL 5382304 (C.D. Cal. June 27, 2012)), this lawsuit was filed against one defendant, and even then, only after Plaintiff's counsel attempted to contact Defendant by telephone six times over a span of five months prior to filing suit. (DE # 47-6, ¶7). These repeated attempts to contact Defendant pre-suit supports a conclusion that Plaintiff's motivation in bringing this suit was proper. *Cf. Dawes-Ordonez*, 418 Fed. Appx. at 821 (plaintiff's decision to sue before giving notice to defendant of its alleged infringement demonstrated a questionable subjective motivation.). That Plaintiff's counsel did not contact defense counsel until the motion to dismiss had already been filed is of no moment to the instant analysis.

Moreover, the conduct by Plaintiff's counsel throughout the duration of the lawsuit, with the exception of one incident that will be discussed *infra,* also evinced a proper motive for filing and continuing to maintain this lawsuit. After learning that there could be a correlation error with the IP address, Plaintiff's counsel took steps to prevent Defendant from incurring further attorney's fees prior to the Hotwire deposition by agreeing to extend Defendant's deadline to file an Answer until after that deposition, and by unilaterally drafting the Rule 26(f) report. (DE ## 17,22 47-6, ¶7). Rescheduling that deposition was not the result of foot dragging by Plaintiff's counsel, but stemmed from a need to schedule that deposition with depositions from another case to reduce Plaintiff's costs. (DE # 47-6, ¶11). Finally, Plaintiff's counsel immediately moved to voluntarily

dismiss the lawsuit, but was unable to do so, initially, because the parties disputed the amount of attorney's fees that should be paid.  *Virgin Records America, Inc. v. Thompson*, 512 F.3d 724, 726  (5th Cir. 2008) (plaintiff's decision to immediately move for dismissal after determining infringer was someone other than defendant supported conclusion that plaintiff prosecuted suit without malevolent intent.).  These acts cumulatively support the Court's conclusion that Plaintiff was properly motivated here, and counsel against awarding fees.

### 2.  Frivolity of Plaintiff's Arguments

Notwithstanding Defendant's claims to the contrary, there should be no dispute that Plaintiff's claims were not frivolous at the commencement of this lawsuit.  The Defendant did not contest the validity of the Plaintiff's copyright or that the sharing of Plaintiff's films through BitTorrent constituted the copying of original work under the Copyright Act, 17 U.S.C. § 501.  Further, the presiding district judge determined at the motion to dismiss stage that Plaintiff had stated a prima facie case for copyright infringement.  (DE # 16).  Moreover, it remains unrefuted that *someone* using the IP address named in the pleadings infringed 14 movies a total of 337 times prior to the commencement of this suit and 25 movies a total of 549 times by the time the infringement ceased.  (DE # 47-6, ¶¶2, 3).  Defendant makes a half-hearted attempt to undermine the detection methods employed by IPP Limited, but those methods have been relied upon in hundreds of lawsuits across the country and by law enforcement to locate criminals.  (DE # 47-3).  Accordingly, this factor also militates against an award of attorney's fees for Defendant.

3.     **Objective Unreasonableness of Plaintiff's Claim**

**Defendant argues that Plaintiff continued to aggressively pursue this action well after it was objectively reasonable to do so.  (DE # 41 at 11) (citing *Oravec*, 2010 WL 1302914, \*3 (objective reasonableness analysis considers the reasonableness of Plaintiff's claims at the time it took the stance at issue or at the time it pressed the arguments).  Specifically, Defendant argues that Plaintiff should have immediately dismissed the action after: (1) learning on September 21, 2012, that Defendant had been out of the country for nearly all of the dates of infringement; or (2) learning on March 12, 2013,[4] that Hotwire made a practice of reassigning IP addresses assigned to a user once that user had been inactive for over twenty-four hours.  (*Id.*).  The Court must reject both assertions.  Expecting Plaintiff to *immediately* dismiss the lawsuit upon receipt of Defendant's affidavit explaining he was out of the country during the time of infringement is unrealistic.  At a minimum, Plaintiff would have been well within its rights to test the veracity of Defendant's assertions through discovery.  Defendant cites no authority for the proposition that the pursuit of this lawsuit became objectively unreasonable the moment Defendant came forward with potential exculpatory evidence.**

**Further, the Court finds Defendant's assertion that Plaintiff should have dismissed this action immediately following Murphy's deposition on March 13, 2013, confounding since the record reflects that is exactly what Plaintiff attempted to do.  (DE # 47-6, ¶12).  It was only because of Defendant's demand for *all* of its costs and attorney's fees ($17,500) that the matter was not dismissed at that time.  The Court finds**

---

**[4]Plaintiff deposed Murphy on March 13, 2013, so that Court assumes Defendant mistakenly identified March 12, 2013, in the response brief.**

10

the continuation of the case at this point over the amount of attorney's fees at issue objectively reasonable.[5]  Accordingly, this factor also favors awarding no attorney's fees.

### 4.      Considerations of Compensation and Deterrence

Defendant maintains that this factor supports an award of fees because "Plaintiff filed this suit by blindly relying on an IP address that - alone - was incapable of identifying the infringing party."  (DE # 41 at 14).  Defendant argues that Plaintiff could have asked Hotwire for the media access control address (MAC Address)[6] associated with the infringement, but did not.  (*Id.*).  Defendant suggests that fees and costs should be awarded here to deter future copyright holders from "initiating costly litigation without first attempting non-judicial resolution."  (*Id.* at 15).

Courts in this District have made it clear that considerations of compensation and deterrence under the Copyright Act "are inextricably intertwined with the reasonableness or frivolousness of the [p]arties' positions, as well as their motivation in litigating the dispute."  *See, e.g., Oravec*, 2010 WL 1302914, *8.  Thus, "a party that advances reasonable, good-faith positions should not be deterred from doing so, even if ultimately unsuccessful, as such claims or defenses help define the scope and limits of copyright protection."  *Id.* (citing *Donald Frederick Evans and Assoc., Inc. v. Continental Homes, Inc.,* 785 F.2d 897, 916 (11th Cir.1986) (under § 505, "a losing party's good faith

---

[5]The undersigned believes that the approximately two week time period where Plaintiff threatened continued litigation of this matter is more properly addressed under the 28 U.S.C. § 1927 analysis, *infra*.

[6]A MAC Address is a unique identifier capable of identifying a physical device such as a laptop, which can be used to connect an IP address to a device in the infringer's possession.

and the complexity of the legal issues likely would justify a denial of fees to a prevailing party."). Here the Court has already determine that Plaintiff possessed a proper motivation in filing and pursuing this non-frivolous suit for infringement. Moreover, Defendant's stated reason in support of this factor - Plaintiff never attempted a non-judicial resolution of this matter - is inaccurate. The record reflects that Plaintiff attempted to contact Defendant at least six times without hearing back from Defendant. As such, this factor militates against an award of fees.

### 5.    Balancing the *Fogerty* Factors

As set forth above, all of the *Fogerty* factors support denying attorney's fees in this case. Plaintiff's motivation in filing and maintaining this suit was proper and the lawsuit was not frivolous or objectively unreasonable. Consistent with other courts on similar facts, *see, e.g., Virgin Records America*, 512 F.3d at 726, the Court recommends that Defendant's request for attorney's fees under § 505 be denied.

### B.    Fees Pursuant to 28 U.S.C. § 1927

Defendant also seeks an award of attorney's fees pursuant to 28 U.S.C. § 1927 against Plaintiff's counsel, Lipscomb Eisenberg and Baker, PL. (DE # 41 at 15). Defendant argues that Plaintiff's failure to conduct a reasonable pretrial investigation coupled with the active pursuit of this matter well after acknowledging that Defendant was not the infringer support an award of sanctions here. (*Id.* at 16). In response, Plaintiff maintains that the Hotwire deposition was proper and not pursued in bad faith. (DE # 47 at 20). Further, "[e]verything following that deposition was aimed at resolving the fee dispute[.]" (*Id.*).

Title 28, United States Code, Section 1927 provides that "[a]ny attorney ... who so

multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.  The "key for unlocking" the power to sanction under 28 U.S.C. § 1927, is a finding of bad faith. *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, No. 09–60351–PAS, 2011 WL 4433570, *4 (S.D. Fla. Sept. 21, 2011).  Even if a Court finds an attorney acted with bad faith, however, a Court does not, *ipso facto*, award sanctions under section 1927.  *Id.* Pursuant to 28 U.S.C. § 1927, a court "may," but need not, sanction an attorney who "multiplies the proceedings ... unreasonably and vexatiously."  28 U.S.C. § 1927.

The parties' arguments on this issue fail to capture the sanctionable conduct in this case.  Defendant is incorrect, for the reasons stated above, that the Plaintiff's inadequate pre-suit investigation and filing this suit with bad faith requires sanctions. Plaintiff is incorrect when it suggests that *everything* that occurred in this case following the Hotwire deposition was aimed at resolving the fee dispute.  If, indeed, Plaintiff had devoted all of its efforts following that deposition to resolving the fee dispute, there would be no basis for an award of sanctions here.  The record, however, reflects that Plaintiff's counsel, for a brief period of time, vexatiously and unreasonably so multiplied this action that an award of sanctions is both just and proper.

Following the Hotwire deposition on March 13, 2013, Plaintiff offered to dismiss the lawsuit contingent upon both parties signing mutual releases.  On March 21, 2013, Defendant presented a counter offer that required Plaintiff to dismiss the action with prejudice, pay $17,500 in fees and file a statement with the Court indicating that Defendant was incorrectly identified as the downloader of the pornographic films.  (DE #

13

47-14).  Plaintiff's counsel was "shocked" and "peeved" by the request for "clearly excessive fees" and, within thirty minutes of receiving the counter offer, sent two "knee-jerk" emails to defense counsel.  (DE # 47, at 6).  The first email stated that, "[y]our offer is rejected.  I will see you at trial."  (DE # 41-2 at 1).  The second, more lengthy email provides as follows:

> I would like to depose Mr. Pelizzo during the first two weeks of April. Please provide me with deposition dates.  If you do not, I will unilaterally set it.  Also, I am going to make a physical inspection of the port at the applicable building.  If you have blackout dates in the second two weeks of April, please advise.  Finally, I am going to depose the IT manager at Hotwire.  The 30(b)(6) deposition pointed to only one possible error in the identification process.  Once I close that loop, our case will be rock solid extremely strong (*sic*).  As you may know, BitTorrent continues to distribute until a user tells affirmatively tells (*sic*) a BitTorrent Client to stop distributing the torrent file so your client being in-and-out of town during the applicable period of time does not undermine the assertion that he is the infringer. The list of infringements against your client is enormous.  Respectfully, you should counsel him that when he loses, he will lose everything he owns and owe my clients hundreds of thousands of dollars.  Mark these words, your client's decision to reject a walk away will be the worst decision he will ever make.

(DE # 41-2).  That email closes with a directive to another employee at Plaintiff's firm to send defense counsel discovery requests by the close of business.  The following day, Plaintiff propounded nineteen requests for production and twenty-five interrogatories on Defendant.  (DE ## 41-3, 41-4).  Plaintiff's counsel suggests he "cooled quickly" and advised defense counsel at the mediation on April 4, 2013, that Plaintiff would voluntarily dismiss this case.  Plaintiff then offered to pay Defendant $13,000 in fees, which Defendant rejected as his attorney's fees at that time totaled approximately $24,000.  (DE ## 47-15, 47-16 and 47-17).

By both subjective and objective measures, the actions and threats as detailed in the second email constitute bad faith and a willful abuse of the judicial process. Plaintiff's counsel had just offered to voluntarily dismiss the claim against Defendant when he sent the email threatening protracted, future litigation. That alone would have been sufficient to award sanctions, but Plaintiff's counsel also asked defense counsel to inform his client that he would be penniless at the conclusion of this case while also owing Plaintiff hundreds of thousands of dollars. The litigation tactics of Plaintiff's counsel amount to more than a lack of professional civility and reveals a pattern of behavior, albeit for a short period of time, that perpetuates "stereotyped caricatures of attorneys held by some members of the public." *Managed Care Solutions*, 2011 WL 4433570, *3. Threatening continued, meritless litigation and financial ruin is the definition of bad faith. Accordingly, the Court will require Plaintiff's counsel to "pay the costs, expenses, and attorneys' fees reasonably incurred because of the attorney's misconduct—that is, the excess costs that the attorney's multiplication of proceedings has added to the cost of the litigation." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1242 (11th Cir. 2007).[7] The excess costs here consist of all attorney time[8] from the receipt of the second email on March 21, 2013, through the mediation of this

---

[7]Plaintiff's counsel has made no claim that he is unable to pay an award of attorney's fees in this case.

[8]The undersigned has disallowed the time spent by attorneys FJF and SC3 on March 27, 2013, for an internal conference regarding file status as not reasonably necessary. The objections lodged by Plaintiff as to the remaining items within this time frame are not persuasive; the undersigned finds the remaining billing entries reasonable as to time spent and the hourly rate. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

matter ($5,740.50 comprised of 26.7 hours at hourly rates between $195 and $215),

together with the cost of mediation ($1,175.00),[9] which total $6,815.50.[10]

### III.   CONCLUSION

Based on the foregoing, the undersigned finds that Plaintiff is not entitled to

attorney's fees pursuant to the Copyright Act but that an award of attorney's fees against

Plaintiff's counsel pursuant to 28 U.S.C. § 1927 is warranted here.  It is hereby,

**RECOMMENDED** that:

> (1)   Defendant Leo Pelizzo's Verified Motion for Attorney's fees and
>
>        costs Against Plaintiff and Lipscomb, Eisenberg & Baker, P.L. (DE #
>
>        41) be **GRANTED IN PART and DENIED IN PART.**  The motion
>
>        should be **GRANTED** such that sanctions are awarded to
>
>        Defendant against Plaintiff's counsel in the amount of $6,815.50
>
>        pursuant to 28 U.S.C. § 1927.

The parties will have until **March 4, 2014**, to file written objections, if any, for

consideration by the assigned United States District Judge.  Failure to file objections

timely shall bar the parties from attacking on appeal any factual findings contained

herein.  *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988); *Resolution Trust Corp.*

---

[9]Although much of the mediation apparently was devoted to the fee dispute, mediation would not have been required if Plaintiff had dismissed this action following the Hotwire Deposition.

[10]The undersigned finds that the dispute over the payment of attorneys' fees was not undertaken in bad faith, frivolously or vexatiously; on the contrary, it was a legitimate dispute.  Nevertheless, a dispute over attorney's fees does not excuse the failure to dismiss a baseless lawsuit.

*v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993).

      **DONE AND SUBMITTED** in chambers in Miami, Florida on the 18th day of

February, 2014.

                                                _____
                                                **ANDREA M. SIMONTON**
                                                **UNITED STATES MAGISTRATE JUDGE**

Copies furnished via CM/ECF to:
        The Honorable Patricia A. Seitz
        Counsel of Record